THE HANSELL-ELCOCK FOUNDRY COMPANY

*v.*

JAMES K. CLARK.

*Opinion filed February 21, 1905—Rehearing denied April 6, 1905.*

1. MASTER AND SERVANT—*fact that an employment is dangerous does not relieve master of obligation to use due care.* The fact that a particular employment is naturally dangerous does not relieve the master of the obligation to use reasonable care to secure the safety of his employees nor impose upon the latter the risk of all dangers connected with the employment, regardless of whether or not the master has exercised reasonable care to eliminate them.

2. SAME—*risk of dangers which cannot be eliminated by master's use of due care is assumed.* The risk of dangers ordinarily incident to the employment, which dangers are not eliminated by the master's exercise of reasonable care to secure the safety of the servant, is assumed by the latter under his contract of employment.

3. SAME—*servant may assume that master has used due care in absence of notice to contrary.* In the absence of actual or constructive notice to the contrary, a servant employed in the construction of a building may assume that the master has exercised reasonable care to see that the iron columns on which the girders are to be placed have been properly and securely erected.

4. INSTRUCTIONS—*evidence is not weighed in passing on peremptory instruction.* In passing upon an instruction to find for the defendant in a personal injury case, neither the trial court, nor the appellate tribunal on review, may weigh the evidence and determine in whose favor it preponderates, but must consider only the evidence most favorable to the plaintiff which the jury might believe.

5. SAME—*when party cannot complain that subject was not a proper one for the jury.* If both parties to a personal injury case procure instructions upon the same theory and with reference to the same subject matter, neither can complain, on review, that the subject was not a proper one for the consideration of the jury.

6. SAME—*when instruction as to future damages is authorized by declaration.* A declaration in a personal injury case averring that the plaintiff will in the future continue to suffer and lose health is sufficient to authorize an instruction concerning the right to recover for future loss of health.

7. SAME—*when reference to future "injuries" does not render an instruction misleading.* An instruction authorizing the jury to compensate plaintiff "for injuries sustained or which he will sustain" is not objectionable, as being calculated to lead the jury to allow damages for future injuries not connected with the injury complained of in the declaration.

8. EVIDENCE—*when evidence of customary manner of construction is inadmissible.* Where a negligent construction is alleged as the basis of an action for personal injuries, evidence as to the usual and customary manner of such construction is inadmissible.

9. SPECIAL INTERROGATORIES—*when failure of court to submit original interrogatories to counsel is not open to review.* The action of the trial court in failing to submit to counsel special interrogatories propounded by the court of its own motion is not open to review, where such action was not urged as error in the motion for new trial.

10. TRIAL—*time for argument is largely discretionary with the court.* While counsel should be allowed ample time to argue the case to the jury, yet the time to be allowed for argument is so far discretionary with the trial court that its action in that respect will not, of itself, work reversal unless the court of review is satisfied the complaining party was prejudiced by the limitation.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

MOSES, ROSENTHAL & KENNEDY, for appellant.

DARROW, MASTERS & WILSON, (JAMES HAMILTON LEWIS, of counsel,) for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county for $8000 in favor of appellee, against appellant, for damages for personal injuries sustained by the appellee while in appellant's employ. Appellee, at the time of the injury, July 16, 1901, was a structural iron worker in appellant's service, engaged in the construction of the St. Cecilia school building,—a three-story structure in the city of Chicago,—and while so engaged was struck by a large iron beam, sustaining the injuries for which this suit was brought.

The original declaration, filed February 17, 1902, was amended January 23, 1903, and again March 18, 1903, just prior to the trial, and a new amended declaration was filed after verdict, prior to final judgment. At the close of plaintiff's evidence, and again at the close of all the evidence, defendant requested the court to direct a verdict in its behalf, which the court declined to do, and this is assigned as error. The other errors assigned relate to the amendments to the original declaration, the giving and refusing of instructions by the court, special interrogatories given by the court, limiting the time of argument and the amount of the judgment.

We will first consider the alleged error of the court in refusing the defendant's peremptory instructions. If there was evidence tending to support the cause of action averred by the plaintiff, and the theory of plaintiff's case was such as might

214—26

raise a legal liability, then the refusal of the instructions was proper.

In the first count of the last declaration filed it is charged that plaintiff was employed by the defendant and ordered by its foreman to work near a certain large, heavy iron column which the defendant had negligently and improperly erected and placed and permitted to remain in an unsafe and improper condition; that the said column had been erected and placed by defendant before the plaintiff began work thereabout; that upon said·column was placed an iron beam; that while in the performance of his duty, as directed by the defendant's foreman, plaintiff was in the exercise of care and caution for his own safety; that said column, standing near where plaintiff was working, with the iron beam resting on the same, by reason of the defendant's negligence suddenly and without warning or notice fell, and the beam with great force and violence struck against plaintiff, by reason whereof the bones of his left shoulder and arm became broken, crushed and fractured, etc., by reason whereof the said shoulder and arm have been rendered, and still are and for all time will be, unfit for use. It is further averred that plaintiff has suffered much "and will in the future continue to suffer and lose health," etc., and the count closes with a claim for. $35,000 damages.

The second count avers that it was the duty of the defendant to furnish plaintiff a reasonably safe place at which to work and to have the column in a reasonably safe and secure condition; that regardless of its duty defendant left the column in an unsafe, insecure and unfastened condition, of which condition the defendant knew·or by the exercise of ordinary care and caution could have known and of which plaintiff did not know; that upon said column was afterwards placed an iron beam, and that by reason of such insecurity, while working alongside said column, the column fell with the said beam so resting thereon, and the beam with great force and violence fell against the plaintiff without any

warning or notice to him, by reason whereof he was injured, etc., and concludes by stating, "and the said shoulder and arm have been rendered, and still are and for all time will be, unfit for use," and further avers that the plaintiff will continue to suffer and lose health, etc.

In the third count it is averred that the defendant employed divers large numbers of men, and among others employed the plaintiff; that when he went to work there was standing a large, heavy column made of iron, erected and placed by the defendant without plaintiff's knowledge, and was in position when he went to work for the defendant and when he was directed by the defendant's foreman to work around and about said column; that it was negligently and improperly maintained in an insecure, unsafe and improper condition, of which the defendant knew or by the exercise of reasonable care could or should have known; that while so employed, in the exercise of care and caution for his own safety, the column, by reason of the negligence aforesaid, and an iron beam resting upon the same, suddenly and without warning fell; that the beam struck the plaintiff, by reason whereof the bones of plaintiff's arm and shoulder became broken, etc., (setting out plaintiff's injury,) "and the said shoulder and arm have been rendered, and still are and for all time will be, unfit for use;" and further says of plaintiff that "he will in the future continue to suffer and lose health; that from thence hitherto he has been rendered unable and unfit to perform any work and for all time will be unable and unfit to do so."

The building where the appellee was employed was to be three or four stories high and the framework of iron and steel. On the basement floor, where appellee was engaged, iron or steel columns between sixteen and seventeen feet in height were erected upon pedestals. These columns, at or near their tops, had brackets, upon which were to be placed the ends of cross-beams and fastened thereto by means of bolts. The south side of the building had not been enclosed.

Up to the time in question appellee had had nothing to do with the work of constructing the building, but on that day had yielded to the request of appellant's foreman, Mr. Johnson, to temporarily take the place of another man. Appellee was a man of general experience in this class of work. The day in question was very warm, so the workmen did not work continuously. The columns on the floor in question had all been erected prior to appellee's arrival upon the scene, and the particular work to be done by appellee and those working with him at that time was the placing of the cross-beams. Appellee says he started to work about eleven o'clock and worked until the time of the accident, about half-past three, and that he had never worked there before. The columns were hollow, cast-iron, eight inches in diameter, and weighed 1523 pounds each. The columns were set in or upon a "stool" for a base. This stool was thirty-two inches square at the bottom, seven and one-half inches high, and weighed 660 pounds. The stool rested on a cement foundation. There was sand on the floor of this basement where appellee was engaged, and this sand was so thrown up around the foundation and stool on which the columns stood as to obscure the same from view. The cross-beams to be raised and placed were twenty-eight feet and seven and one-half inches long, and each weighed 1202 pounds. One end of each beam was to rest on the wall of the building and the other upon the bracket at the top of the column. These beams were hoisted by means of a derrick. Appellee had assisted in raising one of these beams prior to the injury. When this first beam was raised, one of the assistants, by means of the derrick, got upon the beam thus raised for the purpose of completing the attachment of the beam to the bracket of the column on which it rested, and also to remove the chain that was around the beam for the purpose of raising it. While the assistant was thus engaged appellee was on the basement floor in a stooping posture, removing the sand from beneath the next beam to be raised and endeavoring to pass a chain under it

preparatory to hoisting. While appellee was thus engaged the assistant on the first beam completed his work and descended. He had not much more than descended when the beam just raised, and the column to which it had been attached, fell, the beam striking appellee and causing the injury complained of.

The negligence imputed to appellant is with reference to the alleged improper and insecure erection of the column which fell, and which falling occasioned the injury to appellee. The method of this erection and the manner in which the column was secured at its base are detailed in the record at considerable length, but even by the most careful reading of the evidence it is difficult, if not impossible, for a reader to form in the mind an exact picture of the devices used. However, for the purpose of treating and passing upon the question now before us, namely, whether the defendant's peremptory instructions were properly refused, the condition that existed appears sufficiently clear and we deem it unnecessary to set forth more specifically the circumstances. In determining this question we are bound to consider the evidence most favorable to the plaintiff which the jury might believe in arriving at a conclusion favorable to the plaintiff, and if that evidence fairly tends to support or establish the cause of action stated in any count of the declaration, and does no violence to the law proper to be applied to the circumstances out of which this suit arose, then the action of the trial court in refusing these instructions must be sustained. In taking up this question we are confronted at the very beginning with the query, already suggested and raised by appellant, whether the law applicable to the circumstances of the case is such as to preclude appellee from recovery. If this be so it will be unnecessary to review the evidence bearing upon the question of the negligent construction or erection of the column.

Appellant earnestly contends that this injury, lamentable though it be, is simply the consequence of a hazard which the

appellee assumed when he engaged with appellant to do the work in question; that the business in hand, being the construction of a building, was naturally dangerous and that the risks involved were comprehended in appellee's contract of employment. Resolved to its logical conclusion, appellant's argument seems to be that because some lines of business are attended with greater hazard than are others, therefore the master engaged in those more hazardous lines owes to his servant no obligation to observe care for his safety. This proposition seems to us so obviously unjust that the statement of it must carry its own refutation. We regard it as fundamental that a master must observe reasonable care and caution to secure the safety of his servants while engaged in and about the master's business. But, of course, the degree of safety secured to the servant cannot be the same in all lines of employment. After the master has exercised the reasonable care required of him by the law the servant assumes the hazards peculiar to his particular line of employment. If the employment is in its nature dangerous, of course it is not to be expected that all those dangers will be eliminated by the exercise of the reasonable care required of the master by the law, and there will remain a certain amount of risk, varying in degree according to the dangerousness of the employment, to be assumed by the servant after the master has exercised the degree of care which the law says shall be the reasonable precaution demanded of masters in that particular line of business and gauged by the circumstances of the case. The rule stated in *City of LaSalle* v. *Kostka,* 190 Ill. 130, and reiterated in *Western Stone Co.* v. *Muscial,* 196 id. 382, it seems to us, is of general application. It is stated in *City of LaSalle* v. *Kostka,* (p. 135): "The rule that the servant assumes the ordinary risks incident to the business pre-supposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is these risks alone which cannot be obviated by the adoption of reasonable measures of precaution by the master that the ser-

vant assumes." This case was also cited and upheld in *Himrod Coal Co.* v. *Clark,* 197 Ill. 514.

So far, then, as the question of law was raised, upon the presentation of the peremptory instructions, as to whether the theory of plaintiff's case was such as might raise a legal liability, we are of the opinion that the instructions were properly refused.

It only remains now to consider whether the evidence showed facts tending to support plaintiff's charge of negligence. We think that the evidence showed, beyond all doubt, that there was sand around the base of the columns so the appellee could not see, without a special examination, how securely fastened they were. He had no previous knowledge of the work and was not advised as to the method employed, and is shown, himself, to have been in the exercise of reasonable care and caution for his own safety. The evidence to support appellee's charge of negligence in the erection and securing of these columns was, briefly, as follows: "The way that a column is always set, if it is not anchor-bolted it is braced with 2x4 scantlings. I will explain the anchor-bolting. When the concrete is put in a foundation there is two anchor-bolts, probably one and a half, probably two and a half inches. Whatever they are, they are small. They are laid down in this concrete, five or six feet long, in a box, and when the concrete is set the bolts are stationary. The pedestal is then set upon these bolts and bolted down tight,—screwed down with two nuts on them an inch long. When a column like this is erected it is easy. The shoe is easy set upon the anchor-bolts, bolted down securely to hold the column, or there is a collar fitted around this column, made out of wood and braced three ways to brace the column to keep it from falling down."

William Rossiter, in response to the inquiry as to how the column should have been constructed in its foundation, said: "Either anchor-bolts or with braces. I mean by anchor-bolts, bolts that go down,—bolts that go down eight

and ten feet in the ground, some of them not quite that distance. They come up through the base, with a big nut on to them that screws it down tight to it. Otherwise, if there is not that, we generally put what we call a collar around it, and then take 2x4's and drive stakes in the ground, and secure it in that way by making braces. I do not know whether this column was fastened to either one of these ways. I saw the column afterwards. It had no bolts." Upon cross-examination this witness was asked: "In the course of your long experience as a structural iron worker have you ever seen columns placed on stools like this without having the stools bolted to the cement?" and answered: "Well, very seldom. I haven't run into half a dozen of them; just setting down on a stool without anchor-bolts, not half a dozen in my life. I have seen about three jobs where the stool was not bolted to the cement, otherwise they were all bolted to the cement. The three jobs where it was not done were quite a while ago." He was further asked: "Isn't it true that they only anchor-bolt braces or stools in buildings that are going to be twelve, fourteen, fifteen, sixteen stories high, and that in the lower buildings they never anchor-bolt?" and answered: "No, sir; they anchor-bolt in most all jobs. The height of the building cuts no figure."

Michael Donovan, upon this subject, said: "The proper way to fasten one of these upright columns is to put a collar about three-quarters of the way up, 2x4, and wedge it around the column. The other way is to anchor-bolt it in the foundation,—I mean bolts inlaid on the concrete, probably two or three feet in the ground. There were no such braces there." Upon cross-examination this witness further said that anchor-bolting was not always used in buildings three or four stories high, but in such cases sufficiently heavy shoes were used as would hold the column when it was fastened to the shoes.

The witness P. J. Dalton was asked: "Assume, therefore, a cross-beam and iron column which together form, we

will say, a letter L with only one end protruding in a wall, and assume that the weight would be two tons, please state in what manner reasonable care and proper construction would suggest for that particular column to be fixed or constructed?" and answered: "The three points ought to be connected stiffly at all points,—the base point and the top of the column and the wall end,—all the points, all the ends, if it is possible to be done. As to that portion of the column which goes into the ground, that is fastened on principle or system. There are different systems for a base." And in further explanation the witness said: "Irrespective of weight, when the point or ends of the beam rest on the wall unconnected, that it is the invariable custom in that case to have braces of either ropes, guys, or timbers 2x4, or around that way, or rope guys,—that is, where the end is not connected. The proper treatment of the column at the base, such as I have described, ought to be anchor-bolted." He was then asked: "Why are those precautions taken—for what purpose?" and answered: "To avoid risk or accident. In case in hoisting any other material around it, that it will touch it and the weight of anything come against it will tip it over. Wind pressure might have influence."

Nels Johnson, appellant's foreman, was asked, on cross-examination: "Now, I ask you, do you not know there must be either anchor-bolts or braces unless the shoe is heavy enough, or something to balance it down in the ground?" And he replied, "Yes."

We think that here was evidence that at least tended to support plaintiff's charge of negligence and improper construction of the column. The column was not constructed the way certain witnesses testified it should have been for proper safety. One system of construction was to have anchor-bolts extending into the ground or cement for the purpose of holding the column securely. The appellee could not see, and so far as disclosed by the evidence did not know, but what this method was used, hence the danger arising from an improper

or insecure construction was not apparent to him, and he was not guilty of a failure to exercise reasonable care and caution for his own safety for not recognizing latent defects, if such existed. Besides, he had a right to presume that appellant had performed its duty by using ordinary care and prudence in the erection of the column. (*Barnett & Record Co.* v. *Schlapka,* 208 Ill. 426.) The column did fall. Whether it was due to its improper construction and insecure attachment at its base was a question for a jury to decide. It is true, there is also evidence tending to show that the method of construction employed in the erection and securing of the column was a proper one; but we are not to weigh the evidence or determine in whose favor was the preponderance, nor was such the duty of the trial court in considering said instructions, hence we must hold that the court did not err in refusing the peremptory instructions offered by appellant.

It is insisted by counsel for appellant that the court erred in allowing the filing of the amended declaration after verdict. The purpose of this declaration was to avoid any possible variance, the court having used the words "placed" and "placing" in several instructions, while in the declaration of March 18, on which the trial was had, those words were not used. There can be no question as to the court's general power to permit an amendment to the declaration any time before final judgment; but it is claimed that by this amendment appellant was injured, since by the former declaration appellant had not been charged with improperly "placing" the column, and that by speaking to the jury about "placing" the column in a negligent way they were warranted in giving more value to some of plaintiff's testimony than would otherwise have been the case. In the former declaration it was charged that the defendant had "negligently, carelessly and improperly erected and permitted to remain in an unsafe and improper condition" the column; also, that it "left the said column in an unsafe, insecure and unfastened condition, of which said condition the said defendant knew," etc.; also,

"that the said column was negligently, wrongfully and improperly maintained in an insecure, unsafe and improper condition; that the defendant knew it," etc. We think the objection here urged as to the difference between the scope covered by the averments in these two declarations relative to the point under consideration is frivolous, and we are confident that no jury would be able to figure out any distinction between the two.

It is next insisted that plaintiff's instruction No. 1 was erroneous because it referred to all the declarations which had been filed, namely, the one filed February 17, 1902, (being the original,) the amendment thereto filed January 23, 1903, and the amended declaration filed March 18. The last amended declaration, it is insisted, must have superseded all others, and it was improper to refer to them in an instruction. There was no material difference between the declaration of March 18 and those previously filed, except it be that the declaration of March 18 alleged that the beam hit appellee while the others had alleged it was the column that hit appellee, and, so far as this difference is concerned, appellant is in no position to complain, because it procured to be given an instruction which recognized the right of plaintiff to recover if, under certain conditions, he was hit by the falling column, and where both parties give instructions upon the same theory and with reference to the same subject matter, one party cannot complain that the subject was not a matter proper to be submitted to the jury. *Chicago and Alton Railroad Co.* v. *Harbur,* 180 Ill. 394; *Lake Erie and Western Railroad Co.* v. *Middleton,* 142 id. 550.

Counsel for appellant say of plaintiff's second instruction that in it the jury were instructed that they might find for appellee such a verdict, under the evidence and the instructions of the court, as would "be a fair, just and actual compensation for injuries sustained or which he will sustain, so far as such damages and injuries are claimed and alleged in the declaration and shown by the proof," and in estimating

the amount of plaintiff's damages, if any, they might take into consideration, in addition to other features mentioned in the instruction, "such future suffering and loss of health, if any, as the jury may believe, from the evidence before them, he has sustained or will sustain by reason of such injuries," etc.   It is first contended by counsel for appellant that the declaration of March 18, on which the trial was had, did not authorize a recovery for future loss of health.   The declaration of March 18 did aver that plaintiff's "shoulder and arm have been rendered, and still are and for all time will be, unfit for use;" and the declaration of March 26, 1903, filed after verdict, averred "that the plaintiff will in the future continue to suffer and lose health."   Under the final declaration, which must be regarded as the true test to be applied to the instructions, there can be no question but what the instruction, in the particular named, was proper.   Counsel next contend that the reference in this instruction to a recovery for future injuries rendered the instruction bad, their contention being, seemingly, that "future injuries" was a term of general application.   We think it plain that the term "future injuries," as used in the instruction, could not have been understood by the jury, or anyone else, as meaning any other injuries than those growing out of the injury complained of, hence the instruction in this particular is not objectionable.

Counsel for appellant complain of instruction No. 4 given on behalf of appellee, for the reason that "it creates the duty of the company to use ordinary care in furnishing to plaintiff a reasonably safe place and reasonably safe surroundings in which to work, and to use reasonable care to maintain and keep such place in a reasonably safe condition."   In other words, it is insisted this instruction is bad because it runs counter to appellant's theory of the case as to the risk assumed by appellee and appellant's exemption from responsibility because of the nature of the employment.   We have discussed this proposition in connection with the peremptory instructions, and our conclusion there reached was adverse to

appellant's contention, and it is not necessary to again take up that discussion. We think the instruction not open to the criticism offered by counsel.

Defendant's instruction No. 3 asserted that if the column in question was in process of construction and required other work to complete it and in finishing the work with reference to said column plaintiff was injured, then for such an accident the defendant could not be held liable. This instruction was refused by the court, and this refusal counsel for appellant insist was error. The grounds urged in favor of this instruction are based upon the same theory of the law as was urged against plaintiff's instruction No. 4, just considered, and, as stated in that connection, have already been considered, and for the reasons already stated we think the instruction was properly refused. But it might also have been properly refused on the further ground that it was not based on the evidence. The evidence was to the effect that the columns were constructed before appellee's arrival. The laying of the cross-beams, although part of the construction of the building, formed no part in the construction of the columns.

It is next insisted by counsel for appellant that it was error for the court to refuse instruction No. 1, offered by them. The instruction reads:

"If the jury believe, from the evidence, that the column was built in the usual and customary manner, and that the falling of it was an accident occasioned by other physical causes in which the plaintiff or his assistants, if any, participated as workmen, then defendant must be held not guilty."

Where a negligent construction is alleged as the basis of an action, we have frequently held evidence as to the usual and customary manner of such construction inadmissible, and in this respect the instruction offered was bad. (*Beidler v. Branshaw,* 200 Ill. 425.) The instruction is bad for the further reason that it asserted that if the accident was occasioned by causes in which the plaintiff's assistants participated as workmen, then defendant was not liable. Even

though it was meant to say in this instruction,—and such is not plain,—that if fellow-servants of plaintiff participated in the causes productive of the accident the defendant would not then be liable, the instruction would still be incorrect, for if the defendant was guilty of negligence without which the injury would not have happened, the plaintiff himself being without fault, a recovery might be had. *Armour* v. *Golkowska,* 202 Ill. 144; *Pullman Palace Car Co.* v. *Laack,* 143 id. 242; 12 Am. & Eng. Ency. of Law, (2d ed.) 905.

Counsel for appellant submitted and asked to have given six special interrogatories. These were refused, but the court gave of his own motion six interrogatories, which, with the answers of the jury thereto, were as follows:

"*First*—Was the plaintiff, just before and at the time of the happening of the accident complained of, in the exercise of ordinary care for his own safety?—A. Yes.

"*Second*—Was the defendant guilty of the negligence charged against it in the declaration herein?—A. Yes.

"*Third*—If it was, then did such negligence proximately and directly cause said accident?—A. Yes.

"*Fourth*—Was such accident caused by the negligence, if any there was, of the fellow-workmen or fellow-servants of the plaintiff?—A. No.

"*Fifth*—Was said accident caused by the striking of the derrick (if it did strike) against the cross-beam?—A. No.

"*Sixth*—Was said accident due to one of the ordinary risks and perils incident to the work in which the plaintiff was engaged?—A. No."

This action of the court is assigned as error, and specific objections are made to the interrogatories given. The court had the right to submit interrogatories of its own motion. Appellant's counsel urge that the interrogatories should have at least first been submitted to them. The record does not show whether they were thus first submitted or not, but, even conceding that they were not, in appellant's motion for a new trial no error was assigned on the ground that the court did

not first submit the interrogatories to counsel, so that question is not now proper to be reviewed.

The court limited the time of the argument to forty-five minutes for each side, but extended the time seven minutes for defendant's counsel, at their request, but refused to grant further extension although requested so to do, and this refusal of the court is also assigned as error. It is earnestly insisted by counsel for appellant that because of this limitation they were unduly hampered in the presentation of the case to the jury. We have always held this question to be one within the sound discretion of the trial court, but that where it appears that the discretion has manifestly been abused this court would reverse the case for such error. In cases of this character each side should have ample time to present its case to the jury and to thoroughly argue the facts. The bare possibility of compromising the rights of either the plaintiff or defendant because of not allowing counsel ample time in which to present a client's cause should be carefully guarded against. Under our system of jurisprudence · the power of the jury is so great, trial courts should be liberal in their allowance to counsel of time in which to review and argue the evidence. The trial court, however, who hears the case is in a far better position to judge as to the time proper to be given counsel for argument than can be a court of review, and we are not disposed to reverse a case for the reason, alone, that the time allowed counsel for argument was too short, unless we are thoroughly satisfied the complaining party has in fact been wronged by an undue limitation. In this case we think the trial court might very properly have granted counsel more time for argument, but we do not think we would be justified in reversing the case on the simple ground that the limitation was unjust. But seven witnesses testified for appellee and nine for appellant. The record shows that the examination of the witnesses began on the 17th of March, 1903, and that upon the convening of the court on the 19th the verdict of the jury was returned.

But five witnesses on each side testified as to the conditions and scene of the accident. We cannot say from a review of the evidence that the time allotted counsel for argument was manifestly too short.

As to the question of excessive damages, it is enough to say that the amount of plaintiff's compensation for the injuries he received, if the defendant was guilty of the negligence charged, was a question for the jury. The Appellate Court has concurred in the finding of the jury, and thereby the question is concluded.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*