## Chicago & Alton Railway Company v. Sarah A. Seevers, Administratrix.

1. HABITS OF CARE—*when proof of, competent.* The habits of care exercised by the intestate are competent to be shown where there was no eye-witness to the accident.

2. PEREMPTORY INSTRUCTION—*how motion for, to be considered.* Upon a motion for a peremptory instruction the court must consider the evidence most favorable to the plaintiff as true and ignore all opposing testimony.

3. Special interrogatory—*when improperly submitted to jury.* A special interrogatory is improperly submitted to the jury where the answer thereto could not control the general verdict.

4. Assumed risk—*limit of application of doctrine of.* The rule that the servant assumes the ordinary risks incident to the business, presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him; it is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Greene County; the Hon. Owen P. Thompson, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed October 9, 1905.

Rainey & Jones, for appellant; Winston, Payne & Strawn, of counsel.

D. J. Sullivan, for appellee.

Mr. Presiding Justice Puterbaugh delivered the opinion of the court.

This is an action in case brought against appellant by appellee as administratrix of the estate of James H. Seevers, deceased. The case was tried by a jury and a verdict rendered finding the issues for the plaintiff and assessing her damages at $2,500. This appeal is prosecuted to reverse the judgment rendered upon said verdict. The jury also answered a number of special interrogatories submitted in behalf of appellant. At the close of plaintiff's evidence, and at the conclusion of all the evidence, appellant moved the court to exclude the evidence and direct a verdict in its favor, which motions were overruled. A motion for the entry of a verdict for appellant, *non obstante veredicto,* was also interposed and overruled.

The amended declaration avers, in substance, that appellant was, on September 28, 1903, operating its railroad; that on said day plaintiff's intestate was employed by it, thereon, as a brakeman; that it was the duty of the defendant to use reasonable care to see that the road-bed over which deceased was required to work was in a reasonably safe condition, but that the defendant, not regarding

its duty in that behalf, negligently permitted a frog near one of its switches in Granite City to remain unblocked and in an unsafe condition; that such defective and unsafe condition was unknown to the deceased and was not discoverable by him by the use of ordinary care; that while the deceased was exercising due care and caution for his own safety and was attempting to make a coupling between two cars of said train, his foot became caught in the defective frog because of its defective condition, and he was run over by the wheels of the train and instantly killed.

The leading facts involved in the case are as follows : At the time of the accident James H. Seevers, appellee's intestate, was employed by appellant as a brakeman upon its local freight train running between Jacksonville and Venice. He had been so employed for about two years prior to the date of his death. About 12:30 o'clock in the morning of that day, said train reached Granite City, where the deceased proceeded to assist the remainder of the crew in setting off certain cars from the train and in picking up others from a side-track. The cars that were to be set out were mixed with the others in the train, and, in order to get to them, it was necessary to shove a cut of cars that were behind those to be set out, up the main track and cut them off, so that the cars to be set out could be pushed upon the side-track. At the point where the side-track united with the main track there was a spring-frog by which a train was enabled to pass from the siding onto the main track without the necessity of having some one to throw the switch. The frog was so constructed that as soon as a train passed over the frog, the spring adjusted the rails for the main track, but when a train passed from the side to the main track the spring did not operate. The track and the guard-rail ran almost parallel with each other and about two or two and a half inches apart, for a distance of about one or one and a half feet south of the spring in the frog, at which point the rails began to diverge.

To prevent switchmen and brakemen from getting their

feet caught in the space between the rails of this and other frogs, the appellant had in use, at the time of the injury, a system of blocking by which a block or blocks were put in at the point where the rails began to diverge, so that an employee could not get his foot into the hollow below the ball of the rails. The frog in question had been blocked with what is known as the Hartford blocking, which consists of two small blocks of wood, one fastened in the hollow of each rail at the point of divergence. At the time of the injury one of these blocks was out, and the appearance of the frog indicated that it had been out for a long time. Several of the witnesses described the remaining block as being old and chewed or frazzled up as though the wheels of trains had passed over it for sometime. As the cars were being pushed north upon the main track, it became the duty of the deceased to uncouple the cars to be left upon that track, by means of a "Janney" coupler, which, if in proper repair, could be operated by a lever near the outside of the car. The last seen of appellee's intestate alive was at the point where the cars should have been uncoupled. He had stepped between the outer edges of the cars for the purpose of uncoupling this cut of cars from the train. Almost immediately thereafter a fellow-brakeman, who was standing about a car length away, heard the breaking of his lantern and noticed the light go out. Upon investigation he found the mutilated body of the deceased, with his foot still fast in the frog.

There is no direct evidence as to how deceased was attempting to uncouple the cars when he got his foot into the frog, but immediately after the accident it was discovered that the car he was cutting off was one that had just been picked up from the side-track, and that the coupler thereon, although apparently in good repair, was defective in that the pin could not be lifted by means of the lever from the outside, the chain attached to the pin being too long. It was shown that deceased first attempted to uncouple the cars by means of the lever and failed. No one witnessed the accident, but it may be fairly inferred that

he then stepped in between the cars and either attempted to pull the pin with his hand or that he stepped upon the brake-beam in order to reach the pin, and slipped off. However that may be, his foot entered the unblocked frog, and before he could extricate himself the wheels of the car following him pressed his foot along into the frog until it reached the spring in the frog where the foot could not pass. The wheels then passed up the leg and lengthwise over the body, killing him instantly.

A time card adopted over three years prior to the accident was introduced in evidence. Among other rules printed upon the back thereof, was one known as No. 72, which prohibited employees going between cars for the purpose of uncoupling them, and charging all train men with the duty of inspecting frogs, guard-rails and switches before they attempted to step upon or near them, and if the same were not properly blocked to avoid and report them. It further provided that "All employees are enjoined, before coupling cars or engines, to examine so as to know the kind and condition of the draw-head, draw-bar, link and coupling apparatus, and are prohibited from placing in the trains any car with a defective coupling, until they have first reported its defective condition to the yard master or conductor. Sufficient time is allowed and may be taken by employees in all cases to make the examination required."

It is first contended by appellant that there is an entire absence of proof of the material allegation of the declaration that the deceased was, at the time of receiving his injury, in the exercise of due care, and for that reason the trial court erred in refusing to instruct the jury to find for the defendant. Such contention is without force. A number of witnesses testified to the fact that the deceased was careful and prudent in the performance of his duties as a brakeman and was a careful person generally. As no one witnessed the accident, direct evidence was not essential, and this evidence was competent (I. C. R. R. Co. v. Nowicki, 148 Ill. 32), and was clearly sufficient, in the first instance, to

establish due care. If, as appellant insists, the evidence shows that he was injured because of a violation of rule 72, it would merely tend to create a conflict in the evidence upon the question. Upon a motion of this character all that the evidence tends to prove and all just inferences that may be drawn from it in appellee's favor, must be conceded to her. The evidence most favorable to her must be taken as true, and all opposing testimony ignored. McGregor v. Reid, 178 Ill. 471; Martin v. C. & N. W. Ry. Co., 194 Ill. 148. The trial court did not err in overruling said motions.

Neither can it be truly said that the finding of the jury that the deceased was in the exercise of due care, was manifestly contrary to the evidence. Upon the questions as to whether or not rule 72 was in force at the time of the accident; whether or not the deceased violated the same; whether or not such rule had been so habitually violated, to the knowledge of appellant, as that it might be considered as waived or abandoned, and, finally, whether or not there was a disobedience of the same, there was ample evidence to require their submission to the jury for determination. The evidence tends to show that said rule was more honored in its breach than in its observance. We are of opinion that the finding of the jury upon the question of due care was fairly supported by the evidence.

By special findings numbers 6 and 7, the jury found that the deceased and the other members of the train crew were fellow-servants, and by special finding number 8, further found that the train crew had put the car with the defective coupling in the train, in violation of a "well-known" rule of the company. Appellant insists that such violation of the rule by the fellow-servants of the deceased, was the proximate cause of his death, and that a judgment in its favor should have been entered upon the finding referred to, notwithstanding the general verdict. In answer to such contention it may be said, first, that special finding number 8 was improperly submitted to the jury, and consequently the answer thereto could not control the general verdict. It did not relate to or involve the ultimate fact,

but one which was merely evidentiary. Furthermore, the duty imposed by law upon appellant to provide a reasonably safe place for the deceased to work, included the duty to inspect the cars going to make up the train, which duty was personal and could not be delegated so as to relieve it from responsibility. Rogers v. C., C., C. & St. L. Ry. Co., 211 Ill. 132. If, therefore, it be conceded that the proximate cause of the accident was the negligence of a fellow-servant of deceased in placing the defective car in the train, without first notifying the conductor, it does not follow that appellant would be free from liability under the fellow-servant rule.

We are of opinion, however, that the jury was amply justified in finding that the accident would not have occurred but for appellant's negligence in maintaining the defective blocking, and that such negligence was the proximate cause of Seevers' death. The fact, therefore, that the negligence of a fellow-servant in placing the defective car contributed to the result, would not relieve appellant from liability. We find no error in the action of the trial court in refusing to submit to the jury the special interrogatories presented by appellant and refused. They all related to evidentiary and not ultimate facts. The same may be said as to many of them which were submitted.

It is finally urged that a new trial should have been granted, for the reason that the jury was unwarranted in finding that the blocking was defective, or that if defective it had been in that condition for such length of time that appellant can be held to have had notice thereof; and further, that the death of Seevers resulted from one of the ordinary risks of his employment. By attempting to keep all frogs blocked, appellant recognized the danger to employees in leaving them unblocked. Having adopted the blocking system, it thereby held out to its employees that all frogs were properly blocked, and it was therefore bound to keep such blocking in a reasonably safe condition. Labatt on Master and Servant, 181. There was evidence tending to show the absence of one of the blocks from the frogs for several weeks prior to the accident, and that the other

was old, loose and frazzled, and not sufficient to answer its purpose. The record shows that appellant's section foreman, whose duty it was to see that the frog was kept in safe condition, although present at the trial, was not called as a witness. The testimony of the other witnesses upon the question was in conflict. We cannot say that the jury was unwarranted in finding not only that the blocking was defective, but that it had been so for such length of time that by the exercise of ordinary care appellant would have known it.

If, as the jury found, appellant was guilty of negligence in failing to keep the frog properly blocked, it is manifest that the deceased did not assume the risk of injury therefrom. He had neither actual nor constructive notice of the fact. The rule that the servant assumes the ordinary risks incident to the business, presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes. Foundry Co. v. Clark, 214 Ill. 399.

It is not urged that the damages are excessive. We find no prejudicial error in the record and the judgment must be affirmed.

*Affirmed.*