## Illinois Steel Company v. John P. McConnell.

### Gen. No. 12,352.

1. ASSUMED RISK—*when doctrine of, applies.* There is some danger in the ordinary use of ropes for hoisting with derricks and power engines which cannot be eliminated by any reasonable care, and where such ropes are not shown to be defective and the methods adopted for their use are not shown to have been unsafe, and the ropes are solely in the control of the employees directly handling them, the incidental risk which cannot be eliminated by the exercise of such reasonable care is one of the assumed risks of the employment.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the HON. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Reversed. Opinion filed April 24, 1906. Rehearing denied May 11, 1906.

**Statement by the Court.** This is a suit to recover for personal injuries suffered by appellee while in appellant's employ.

The declaration contains three counts. The first of these avers that plaintiff was employed by defendant to assist other employees in elevating heavy pieces of beams of iron and steel to be used in building a solid floor over certain

Illinois Steel Co. v. McConnell.

ore bunkers, which pieces of iron had to be elevated about twenty feet from the ground; that owing to the negligence of defendant in not providing a sufficient number of men to do the work, plaintiff was compelled under direction of the foreman to elevate the iron by means of a shaft, which was a dangerous method, owing to which plaintiff was caught by said shaft and whirled and twisted around it, receiving the injuries complained of. The second count avers that defendant provided a dangerous and unsafe method of elevating said iron, compelling plaintiff to make use of a shaft operated by electricity nine feet above the ground and to use a rope extended from the top of a derrick high above the ground to said shaft, which rope was old, worn and frayed, owing to which negligence plaintiff was injured. The third count avers that plaintiff was directed by the foreman of defendant company to assist in elevating the iron and to use an old and worn rope and a shaft not constructed for such purpose running nine feet above the ground; and he was directed to cause the rope to be wound around said iron shaft while said shaft was in rapid motion for the purpose of elevating the iron, and was also directed to mount upon a barrel so as to wrap the rope around the shaft, the barrel not being a safe appliance for such purpose, by reason of which negligence of the defendant and of further negligence in not providing a means of cutting the rope when danger should arise and not informing plaintiff and others how to stop the shaft, plaintiff was injured.

Defendant pleaded the general issue. Upon the trial a jury found defendant guilty and assessed damages in favor of plaintiff. Judgment was entered accordingly.

KNAPP, HAYNIE & CAMPBELL, for appellant.

GEMMILL & FOELL, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

There is no material conflict in the evidence as to material facts upon which the determination of this case mainly

rests. Appellant at the time of the accident was operating a double track railroad upon a high trestle over which it ran cars loaded with oar and other material for blast furnaces, which material was dumped from said cars into the tops of pockets or bins erected in double rows either side of said tracks. Upon the ground underneath this trestle was another railroad track upon which ran a car used to take the material from the bottom of these pockets to where it was dumped into a "skip car" or "skip hoist" which carried the coke, ore and limestone on an incline to the top of certain furnaces, into which it was thrown. In order to protect its employees working on the lower track and about the bottom of the pockets, from injury by ore which was liable to fall from the tracks above whenever such ore was dumped into the tops of the pockets, defendant was covering the space on the supporting trestle between and outside of the rails of the upper track with iron plates. Along the entire length on the north side of the row of pockets ran a revolving shaft about nine feet from the ground, which furnished the power and operated the machinery for loading the ore from the bottom of the pockets into the car on the lower track. The power operating this shaft was furnished by an electric dynamo.

Appellee with four others was employed in raising the steel plates from the ground to the trestle supporting the upper railway where they were being put in place to floor over the space outside of the rails. The men raised the first plates by main strength, hauling them up by a rope running over a pulley on the derrick overhead. It is claimed that this was found to tax their strength too severely, although it appears from evidence of appellee's witnesses that two men could hoist two plates without any great strain, even though some of the largest plates, it is said, may have weighed about a thousand pounds. In order to save themselves the effort of lifting, and apparently also in order to hoist more plates at a time, the men undertook to hoist the iron by attaching the loose end of the hoisting rope to an electric car which ran along the railway. They

could not do this regularly, however, because the car was much of the time in use elsewhere. It occurred to one of them, therefore, and was by him suggested to the foreman that the revolving shaft above referred to could be used. To this the foreman is said to have assented, saying: "All right. Go ahead if you think it is safe. Try one turn of the rope around the shaft, and if you think it safe, put on another turn." Thereafter the men made use of one or the other of these appliances, the car when available and the shaft at other times. In using the shaft, which was, as stated, nine feet above the ground, one of the employees stood on a barrel resting on the ground, and pulled down the loose end of the hoisting rope which ran over a pulley on the derrick above, the other end being fastened to the plates to be hoisted. He passed the loose end of the rope under the shaft from the side opposite him, pulled it toward him, put it over the shaft which was meanwhile continuously revolving, and again pulled the loose end toward him from under the shaft, repeating the operation if it was necessary to take two or more turns around the shaft. He then gradually pulled the rope taut until the shaft began to take hold of and wind up the rope, thus hoisting the load.

A day or two before the accident, appellee and another had been told by the foreman to work below, sending up the plates of iron. In so doing, they together arranged a bundle containing, it is said, six of these steel sheets, and hooked it on to the tackle. Then appellee climbed on the top of the barrel, where he placed the rope around the shaft. When the accident occurred he had passed the rope away from him once over the shaft and reached under the shaft with his right hand to get hold of the rope and pull it toward him again. In other words, he had taken a turn and a half, as he states it, around the shaft, and reached for the end of the rope and apparently with his right hand, "and just as I did, the line gave a jump and caught me and picked me up." Appellee says "at the time this jump occurred, I was just pulling the first turn around."

He had gloves on at the time. The shaft was stopped as soon as the men could get at the dynamo, but meanwhile appellee was whirled around it and thrown off on an ore car some twenty feet away, receiving the injuries complained of.

It is clear, we think, that the charge made in the declaration that appellant failed to provide sufficient help has no relation to the proximate cause of the injury. The charge that the foreman adopted a dangerous method of raising the sheets of iron is not material, if, as appellant urges, appellee assumed the risk with full knowledge of the entire situation, nor if, as is likewise contended, the method employed was not more dangerous than an ordinary winch or "spool" of an engine and only required care in handling the rope. The only danger apparently thought of was that the line might foul and pull the derrick down. There is also a charge in the declaration that the rope was frayed and worn. It seems to have been strong, however, able to bear all the strain to which it was subjected, and there is no evidence that this fraying of the rope, caused by use, had anything to do with the accident.

Appellee places his claim to recover upon two grounds, that he was not himself negligent, and that he did not assume the risk. It may, we think, be assumed that the evidence does not disclose just how the appellee's hand came to be caught by the rope. He testifies that "the line jumped from some cause unbeknown to me." So far as it appears, it was not in consequence of any negligent act of appellant, either of omission or commission. There is evidence to the effect that the derrick from which the rope was suspended had been moved four or five feet just before the accident, but so far as appears this was incident to the work, the shift being made to deposit the material hoisted where was most convenient for those putting it in place. Testimony given in behalf of appellee tends to show that when moved the derrick was "set up so that it leaned over in that same way to make a straight fall down." So far as we are advised, the moving does not ap-

pear to have had any causal connection with the accident. At all events, it is conceded by appellee's attorneys that the movement of the derrick is not "a ground of recovery in this case."

The main question argued is, did appellee assume the risk. His attorneys call attention to the rule, as stated in Hansell Elcock Foundry Co. v. Clark, 214 Ill. 399, citing City of La Salle v. Kostka, 190 Ill. 130, where it is said that "The rule that the servant assumes the ordinary risks incident to the business presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution by the master that the servant assumes." When the method of hoisting used in the case at bar was once adopted, it is not apparent that any measures of precaution that could have been employed by appellant would have prevented the accident. This method was suggested by the men themselves. It was assented to by the foreman, with a proviso that they found it safe. The occurrence of the accident depended, so far as the evidence tends to show, upon the way in which the rope was handled by appellee. No cause is indicated why the rope should "jump" and catch his hand, as appellee says it did, unless it be the way in which he was handling it at the time. He had been doing the same work for two days or more immediately preceding the injury and probably at prior times. There was no change in the conditions. They were in all respects the same at the time of the accident as before when appellee and his co-employees hoisted the steel plates in the same manner by the same apparatus. There is no evidence tending to show that the use of the shaft in this manner with ordinary care was not reasonably safe. All that was needed was to keep the rope from fouling and the employees' hands from getting caught, in which, so far as could be foreseen, there was no apparent difficulty. In Hansell Elcock Foundry Co. v. Clark, *supra,* it is said: "If the employment is in its nature dangerous, of course it is not to be expected that all those dangers will be eliminated by the

exercise of the reasonable care required of the master by the law, and there will remain a certain amount of risk, varying in degree according to the dangerousness of the employment, to be assumed by the servant after the master has exercised the degree of care which the law says shall be the reasonable precaution demanded of masters in that particular line of business and gauged by the circumstances of the case." There is some danger in ordinary use of ropes for hoisting with derricks and power engines which cannot be eliminated by any reasonable care of the master. The ropes are solely in the control of the employee directly handling them, and such risk the latter assumes necessarily. In Ill. Steel Co. v. Wierzbicky, 206 Ill. 201, cited by appellee's attorneys, the employee's hand was caught in a defective end of a rope. There is no evidence of that kind in this case. Nor was there here any special order of the master to appellee through the foreman as there was in Cobb Chocolate Co. v. Knudson, 207 Ill. 452. The only directions given were such as were incident to the service in which appellee was engaged. Dolese v. Schultz, 101 Ill. App. 569–571.

In Williams v. Churchill, 137 Mass. 243, a sailor was caught in a rope, the accident happening in an instant, as in the case at bar, he acting under orders of the master; but as in the case at bar "all the elements of the task and the risk" were "as visible to him as anyone," and the master was held not liable. See also Wilson v. Tremont & Suffolk Mills, 159 Mass. 154.

While it is true appellee's injuries were inflicted when he no doubt supposed he was using reasonable precaution, it is equally true that neither he nor his fellow-employees, nor the foreman, then supposed there was any special risk or danger in what he was doing, nor that the master was in any way neglecting proper care for the safety of the men who were operating the rope as was appellee when injured. We are forced to the conclusion that the evidence did not justify the verdict, and that the judgment must be reversed.

*Reversed.*