# Fred Wenger, Appellee, v. Strobel Steel Construction Company, Appellant.

## Gen. No. 16,881.

1. MASTER AND SERVANT—*upon what doctrine of assumed risk predicated.* The doctrine of assumed risk presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution by the master that the servant assumes. The mere fact that the occupation is hazardous does not render the master immune from liability if he is negligent in his conduct. He must use reasonable care and caution to secure the safety of his servant while engaged in and about his business.

2. TRIAL—*discretionary power of court to permit evidence in chief upon rebuttal.* If evidence is proper in chief its admission upon rebuttal will not reverse in the absence of an abuse of discretion by the trial court.

3. EVIDENCE—*when manipulation of ankle will not reverse.* If after the court has permitted a plaintiff in a personal injury action to manipulate his ankle, claimed to have been injured, in the presence of the jury, he orders such evidence stricken out and directs the jury to disregard a movement made by the plaintiff, a reversal will not be ordered.

4. INSTRUCTIONS—*when modifications will not reverse.* Slight modifications of instructions will not reverse even though subject to criticism if no prejudice appears to have resulted.

`384`   APPELLATE COURTS OF ILLINOIS.

Wenger v. Strobel Steel Construction Co., 170 Ill. App. 383.

5. VERDICTS—*when not excessive.* *Held,* in a personal injury action that a verdict for $7,000 was not excessive where it appeared that the plaintiff was about 40 years of age at the time of the trial, and prior to the injury was earning about 4 dollars per day, that he underwent a second operation about 7 months after the accident, and at the time of the trial, which occurred about a year and a half after the accident, there was still an opening in his leg from which pus was being discharged, and that the evidence tended to show that the injury sustained was permanent.

SMITH, J., dissenting.

Appeal from the Superior Court of Cook county; the HON. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed May 21, 1912. *Certiorari* denied by Supreme Court (making opinion final).

FRANK M. COX and R. J. FELLINGHAM, for appellant.

DAVID K. TONE and H. M. ASHTON, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

Judgment was obtained by the appellee against the appellant in the sum of $7,000 upon a verdict of a jury rendered for that amount, the action having been brought for damages for personal injuries alleged to have been sustained by the appellee by reason of the negligence of the appellant.

The appellee was in the employ of the appellant, and was working with a gang of men in tearing up a wooden structure constituting a temporary railroad bridge of the Lake Shore & Michigan Southern railroad, at a street crossing in the city of Chicago. The immediate foreman of appellee was one William Belt. Daniel McAvoy was the general foreman from whom Belt received instructions and who exercised authority over two or more gangs of men, including the one in which appellee was working. The railroad tracks at the street in question extended substantially east and west. The wooden bridge which was being torn up was about 18 feet above the ground. The rails and ties had been removed from the bridge, and the men

were engaged in removing the stringers that extended lengthwise upon it. The one which was being handled at the time of the accident was 9 by 16 inches and 24 feet in length. These stringers rested on caps, and on top of them ordinary railroad cross-ties were laid. Bolts, called backing bolts, had been put through these stringers sidewise to keep them from spreading apart. The stringers were bolted to the caps immediately under them by drift or drop bolts, the drift bolts being ¾ of an inch thick. The bolts were from 18 to 30 inches long, and were driven down through the stringers and buried in the caps underneath. The derrick used in the work was equipped with a rope and also a cable, the former being used for the lighter loads and the latter for the heavier ones. There is conflict in the evidence as to how the drift bolts were taken out prior to the accident. The appellee and three witnesses who gave evidence in his behalf testified that the drift bolts were first removed by using a clawbar, and then the stringer afterwards raised by the derrick and steam power. On the other hand several witnesses for the appellant testified to the effect that the drift bolts were never pulled by hand power and a clawbar, and that they could not be so pulled; that they were in fact pulled first by the rope line being placed around the stringer and pulling and jerking the stringer and drift bolt loose from the cap.

The foreman, Belt, heretofore referred to, was a witness for the appellee. He testified that about 15 or 20 minutes before the accident he told the men to pull out the bolts; that he told appellee and one Welch to "hook on the center of the timber and then to get in the clear;" that appellee and Welch adjusted the line three times before the accident happened. He further testified: "The first time they went out and hooked onto the center of the timber. Then we raised the timber up the first time and I saw it was fouled on the east end, and I slackened the timber down again

386 · Appellate Courts of Illinois.

Wenger v. Strobel Steel Construction Co., 170 Ill. App. 383.

and told them to take the line out and hitch it onto the end that was fouled, and plaintiff and Welch went out there and put on the line, and then they got off the timber and I went ahead on it and loosened the timber up, and after I loosened the timber up I slacked down again and moved the line to the center, and in slackening this timber down this drift bolt in the center fouled again. When I told plaintiff and Welch the third time to adjust the line they went out there and hooked in the center of the timber as near as they could. Then Welch went to the east end of the bridge and plaintiff came to the east end of the derrick. Plaintiff went about 25 feet and at the time of the accident he was standing within three feet of the car. The first time after plaintiff adjusted the line he stood back at the end of the car just about the same place." He further testified that he went ahead on the timber, and had the timber up about 10 or 12 feet in the air, and then gave the niggerhead man a signal to stop; that thereupon McAvoy, the general foreman, who was standing at the east end of the bridge, said "Go ahead and take the —— thing out of there;" that he, Belt, obeyed this order and gave the engineer a signal to go ahead; that the engineer gave the niggerhead man steam to pull it; and that when the timber let loose on the east end it struck the ball of the railroad rail and skidded back and caught plaintiff between the timber and the brake-beam of the derrick car. The west end of the timber hit the derrick car and the plaintiff. At that time the east end of the timber was up in the air and appellee was standing at the east end of the derrick by the side of Belt (the witness). The testimony of appellee on the manner of the accident was substantially the same as that of Belt, excepting that appellee said he undertook to get upon the derrick car after McAvoy gave Belt ·the order. Belt says that he did not notice that appellee moved from the position directly east of the derrick.

Wenger v. Strobel Steel Construction Co., 170 Ill. App. 383.

The chief portion of the oral argument made in behalf of the appellant was, and a large portion of the written argument is, devoted to a discussion of the proposition that the appellee was guilty of contributory negligence in going west instead of east, as did his companion.

The testimony would indicate that it had been customary in like circumstances for some of the men to go towards the derrick car and for others to go east; that the men were supposed to look after themselves, and no definite orders were given them as to where they were to stand. The argument of appellant is that it was apparent that the necessary result of handling the timber in the way that it was being handled would be to cause it to come towards the derrick; that therefore the foreman, the appellee and others who stood in a position where the timber might have reached them were guilty of negligence. The question of negligence is a mixed question of law and fact. The action of the appellee was not such that we can say he was guilty of contributory negligence as a matter of law. Nor, considering the question as one of fact, can we say that the verdict of the jury upon it was against the manifest weight of the evidence. Some of the men were in the habit of going towards the derrick car, and others in the opposite direction, when a timber was being raised. If the timber was so handled that it went straight in the air there was no danger. If, however, it went up at an angle it would naturally go towards the derrick car, as the force exerted upon it came from that direction. The foreman, however, was at the east end of the derrick car, and evidently considered it a safe place. Both he and appellee were there when McAvoy, the general foreman, gave the order complained of, and McAvoy must have been aware of that fact.

The jury by its verdict has found that the appellee was not guilty of contributory negligence, and the

trial judge by refusing to grant a new trial has set his approval upon its finding in that regard. In our opinion the judgment should not be reversed on the ground that appellee was guilty of contributory negligence.

It is next argued by the appellant that the risk was one which was assumed by the appellee under his contract of employment. It is true that a servant assumes the ordinary risks incident to the work upon which he is engaged, and these risks are necessarily greater where the work consists in demolishing a building or erecting a structure which requires the handling of heavy pieces of material, etc., than are those incident to other occupations. But the rule presupposes that the master has performed the duties of caution, care and vigilance which the law casts upon him. It is those risks alone which cannot be obviated by the adoption of reasonable measures of precaution by the master, that the servant assumes. Pantzer v. Tilly-Foster Iron Milling Co., 99 N. Y. 368; City of La Salle v. Kostka, 190 Ill. 130. The mere fact that the occupation is hazardous does not render the master immune from liability if he is negligent in his conduct. He must use reasonable care and caution to secure the safety of his servants while engaged in and about his business. Hansell-Elcock Foundry Co. v. Clark, 214 Ill. 399; American Car Co. v. Hill, 226 Ill. 227.

Appellee argues that the foreman, Belt, was operating the derrick properly; that he discovered or became aware that the bolts had not been taken out, and thereupon ordered the machinery stopped; that at this juncture McAvoy appeared upon the scene and gave the order as heretofore set forth, which resulted in Belt doing what he would not otherwise have attempted. McAvoy was vice-principal of the appellant, and Belt, as foreman or sub-foreman, was acting in a similar capacity. The negligence of either of these men must, in our opinion, be regarded as the negli-

gence of the appellant. It was, therefore, a question of fact for the jury to determine whether or not these men were or either of them was guilty of negligence, taking into consideration the fact that appellee, perhaps with others, was standing east of the derrick car and in what is now claimed by appellant to have been a dangerous location in view of what was being attempted. We cannot say that the decision of the jury, as expressed by its verdict, is, with reference to this point, manifestly against the weight of the evidence.

The testimony of a witness named Lundberg was introduced by the plaintiff in rebuttal, and the complaint is made that it was improper because it was a part of the plaintiff's main case and therefore should have been offered before the defendant's testimony was produced. Whether or not testimony should be allowed in this manner is a matter resting in the sound discretion of the court, and will not be reviewed on appeal unless that discretion is shown to have been abused. City of Sandwich v. Dolan, 141 Ill. 430; I. D. & W. Ry. Co. v. Hendrian, 190 Ill. 501. We cannot say that there was an abuse of the discretion in the case before us.

During the course of his examination, the plaintiff was asked the question as to how much he could move his ankle. He undertook to answer by indicating with his foot. That was objected to by counsel for the defendant. The ruling on the objection was deferred, and afterwards, at the request of plaintiff's counsel to "strike it out," the court said, "Strike it out, and the jury will disregard the movement made by plaintiff." While the indication attempted to be made by the witness was perhaps improper, as being self serving, we think the announcement of the court was sufficient to remove any incorrect impression the jury may have received.

Complaint is made as to the action of the court in

390      APPELLATE COURTS OF ILLINOIS.

Wenger v. Strobel Steel Construction Co., 170 Ill. App. 383.

modifying certain instructions tendered by the appellant, and in refusing certain other instructions tendered by it. We have carefully considered the objections, and think that the instructions given by the court—6 as tendered by the appellee and 17 as tendered by the appellant—sufficiently and correctly advised the jury as to the law which should govern them in arriving at their verdict. We do not regard the slight modifications made in instructions tendered by the appellant as erroneous.

It is insisted by the appellant that the damages awarded are excessive. The appellee, it appears, was about 40 years of age at the time of the trial, and prior to the injury was earning about $4.08 a day. He underwent a second operation about seven months after the accident, and at the time of the trial, which occurred about a year and a half or more after the accident, there was still an opening in his leg from which pus was being discharged. There was also testimony to the effect that the injury would be permanent. We do not regard the amount of the verdict so large as to require us to reverse the judgment on that ground.

We find no error in the record which should cause a reversal of the judgment, and the same is affirmed.

*Affirmed.*

MR. JUSTICE SMITH dissented on the ground that if plaintiff's duty required him to go west toward the derrick, he assumed the risk of an obvious danger in his employment; if it was not his duty to go west toward the derrick, he was guilty of contributory negligence in taking a position towards which the force exerted upon the timber or stringer would cause it to move with great force when detached from its fastening.