(No. 14930.—Judgment affirmed.)

WILLIAM JENEARY, Defendant in Error, *vs.* THE CHICAGO AND INTERURBAN TRACTION COMPANY, Plaintiff in Error.

*Opinion filed February 21, 1923.*

1. NEGLIGENCE—*when violation of law by plaintiff will not bar recovery—instructions.* The fact that the plaintiff was violating the law at the time he was injured will not necessarily bar his right to recover even though the illegal act made it possible for the accident to occur, provided it was not the proximate cause; and an instruction to direct a verdict for the defendant because of the plaintiff's contributory negligence is properly refused where there is evidence tending to show that the contributory negligence was not the proximate cause of the accident.

2. SAME—*ordinance in regard to operation of railroad "cars" includes the singular.* An ordinance in regard to the speed of a "passenger train of cars" for the purpose of preventing injury to persons and property applies to a single interurban car running alone as well as to a train of cars.

3. SAME—*when an employee is engaged in interstate commerce.* The foreman of a switching crew is engaged in interstate commerce at the time of his injury where the accident occurred while he was directing the movement of two empty cars destined for interstate shipments and was ordered to return with two cars already loaded with interstate shipments, as both operations are so closely connected with interstate commerce as to be a part of it and to bring the employee under the Federal Employers' Liability act.

4. SAME—*when wanton or willful negligence is a question for the jury—instructions.* Although the plaintiff, who was foreman of a switching crew, was guilty of violating an ordinance in not bringing his train to a full stop before crossing an interurban line in a village, the question of wanton negligence of the interurban company in injuring him is for the jury, where the evidence is not disputed that because of the wet condition of the tracks and the speed of his car the motorman was unable to stop at the crossing as he intended and was accustomed to do; and it is not error to refuse an instruction which ignores the charge of wantonness.

5. SAME—*what constitutes wanton negligence.* To constitute wanton or willful negligence the party doing the act or failing to act must be conscious of his conduct and that it will naturally and probably result in injury, and ill-will or an intent to injure is not a necessary element.

6. SAME—*when misconduct of juror will not set aside verdict.*
The misconduct of a juror in making a familiar remark to counsel
for the plaintiff when leaving the jury box is not ground for set-
ting aside a verdict for the plaintiff where there is nothing to show
that the misconduct was prejudicial to the defendant.

WRIT OF ERROR to the Appellate Court for the Second
District;—heard in that court on appeal from the Circuit
Court of Kankakee county; the Hon. A. W. DeSELM,
Judge, presiding.

W. R. HUNTER, for plaintiff in error.

MILLER & STREETER, for defendant in error.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of
the court:

Defendant in error brought his action on the case in the
circuit court of Kankakee county to recover damages from
plaintiff in error for injuries received in a collision between
a New York Central railroad train, on which defendant in
error was employed, and an interurban car belonging to
the plaintiff in error. The declaration consisted of three
counts, the first charging general negligence; the second,
negligence growing out of violation of a speed limit ordi-
nance; and the third, willfulness and wantonness. Plaintiff
in error pleaded the general issue. The jury found it guilty
and assessed damages at $3250. The judgment entered on
this verdict was affirmed on appeal to the Appellate Court,
and the case is here on *certiorari.*

Defendant in error on the morning of the accident was
acting as foreman of a switching crew for the New York
Central Railroad Company. This company has a track run-
ning from Kankakee to Bradley, a distance of about a mile
and a half. Plaintiff in error operates its cars from Kan-
kakee to Bradley over the tracks of the North Kankakee
Electric Light and Railway Company, a corporation organ-

ized under the general Corporation act. The David Bradley Manufacturing Works, at Bradley, notified the New York Central Railroad Company to deliver to it two cars, both to be loaded with agricultural machinery,—one destined to Portland, Oregon, and the other to Seattle, Washington,—and to pick up two cars at the factory which were loaded with goods billed for shipment to various points outside of Illinois. The switching crew of which defendant in error was foreman started for Bradley with the two cars ordered, the engine pushing the cars. On the way the crew picked up a coal car, which was the front car as they proceeded west into Bradley on South street. They approached Schuyler avenue, in which are laid the tracks over which plaintiff in error operates its electric cars, traveling three or four miles an hour. Defendant in error was riding in the front end of the coal car, directing the operation of the train. He looked north and south as the front end of the train emerged from between the buildings fronting on South street and saw an interurban car coming from the north, 600 or 800 hundred feet away. It was usual and customary for the interurban cars to stop before crossing the railroad tracks, and the motorman testified that he knew that it was his duty to stop there and that he intended to stop on this occasion. The car continued to approach at a speed estimated by the motorman at twenty miles an hour and by the New York Central train crew at forty miles an hour. The motorman did not slacken his speed until he was within 250 feet of the crossing. The tracks were wet, and when he applied his brakes he was going so rapidly that it was impossible for him to stop in time to avoid the collision. The coal car was knocked from the track and defendant in error was seriously injured.

Plaintiff in error first contends that the trial court should have directed a verdict in its favor because defendant in error was guilty of contributory negligence in that he did not cause his train to stop within 800 feet of the

crossing. This contention is based on section 12 of the act relating to the operation of railroads, which requires all trains running on any railroad in this State, when approaching a crossing with another railroad upon the same level, to be brought to a full stop before reaching the same and within 800 feet therefrom, and which requires the engineer or other person in charge of the engine attached to the train to positively ascertain that the way is clear and that the train can safely resume its course before proceeding over the crossing. Without considering whether this statute is applicable to defendant in error or to the situation presented by this case, failure to stop would not necessarily bar recovery. Violation of a law at the time of an accident by one connected with it is usually evidence of negligence, but there remains a question of fact whether the illegal act is the proximate cause of the injury. The mere fact, if it be a fact, that defendant in error was violating the law at the time he was injured will not bar his right to recover unless the unlawful act in some way proximately contributed to the accident in which he was injured. If the illegal act is a mere condition which made it possible for the accident to occur but is not itself a part of the accident it will not bar recovery. (*Lerette* v. *Director General, ante,* p. 348.) There was evidence in the record which would have justified the jury in finding that the failure to stop was not the proximate cause of the accident, and the question was therefore properly submitted to the jury. (*Schlauder* v. *Chicago and Southern Traction Co.* 253 Ill. 154.) The court properly refused the peremptory instruction.

Over the objection of plaintiff in error the court received in evidence the following ordinance: "No railroad company, conductor or engineer or other employee of such company shall run or permit to be run within the city limits of said village any passenger train of cars at a greater rate of speed than ten (10) miles per hour, nor any freight train or car at a greater speed than six (6) miles per hour, un-

der a penalty of not less than twenty dollars ($20) nor more than one hundred ($100) dollars for each offense." It is contended that this ordinance does not apply to an interurban car because it is not a "passenger train of cars." In the first place, it is evident from reading the entire ordinance that there is a typographical error in the ordinance and that the phrase should be "passenger train or cars." It is a well recognized tenet of statutory and ordinance construction that words used in the plural shall include the singular, and so the word "cars," if standing alone, would clearly include a single interurban car. Construing the ordinance as it is written, it is clear that it was properly received in evidence. The purpose of the ordinance was to prevent injury to persons and property from the running of trains and cars at an excessive rate of speed within the village, and a single interurban car comes clearly within the reason and purpose of the ordinance,—as much so when running alone as when several are coupled together and running as a train of cars. *East St. Louis Connecting Railway Co.* v. *O'Hara,* 150 Ill. 580; *Same* v. *Reames,* 173 id. 582.

It is further contended that defendant in error was not engaged in interstate commerce at the time of the accident and that he comes within the terms of the Workmen's Compensation act and therefore cannot maintain this common law action. This contention seems to us to be wholly without merit. This switching crew was acting under special orders to set two cars designated for interstate shipments and to take two cars already loaded with interstate shipments. The cars to be used to carry the goods to Oregon and Washington could not be loaded until they were delivered at the factory, and the cars loaded at the factory could not be delivered to their destination until they were brought from Bradley to Kankakee. Both operations were so closely connected with interstate commerce as to be a part of it, and the employment of defendant in error comes within the scope of the Federal Employers' Liability act. *Chicago*

*Junction Railway Co.* v. *Industrial Board,* 277 Ill. 512; *Wangerow* v. *Industrial Board,* 286 id. 441; *Chicago and Alton Railroad Co.* v. *Industrial Com.* 288 id. 603.

It is contended that the court erred in refusing instruction No. 20, which reads:

"You are instructed that the statute of this State provides that all trains running on any railroad in this State, when approaching a crossing with another railroad upon the same level, shall be brought to a full stop before reaching the same and within 800 feet therefrom, and the engineer or other person in charge of the engine attached to the train shall positively ascertain that the way is clear, and that the train can safely resume its course before proceeding to pass the crossing. And if you believe from the evidence, that the train on the New York Central track was not brought to a full stop before reaching the crossing where the collision occurred and within 800 feet therefrom, and if you further believe from the evidence that the failure to so stop said train was the proximate cause of the injury to plaintiff, you should find the defendant not guilty."

This instruction directs a verdict and entirely ignores the third count of the declaration, which charged that the plaintiff in error willfully and wantonly ran its train against defendant in error and injured him. Whether the injuries were willfully and wantonly inflicted was, under the facts in this case, a question for the jury. The motorman knew that he was approaching a grade crossing over which a train might be expected to pass. The crossing was in a closely built-up portion of the village and a view of the same was somewhat obstructed by the surrounding buildings. It was a place where the interurban car was expected to stop, and yet the motorman approached the crossing on slippery tracks at such a high rate of speed that he was unable to stop in time to avoid the collision. Ill-will is not a necessary element of a wanton act. To constitute a wanton act the party doing the act or failing to act must be conscious of

his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness, such as charges the person whose duty it was to exercise care with the consequences of a willful injury. (*Walldren Express Co.* v. *Krug,* 291 Ill. 472; *Bernier* v. *Illinois Central Railroad Co.* 296 id. 464.) To have given this instruction would have been to direct a verdict of not guilty under the third count, and this the court was not authorized to do. Other objections to the instruction need not be considered. Instruction No. 22 was properly refused for the same reason, and for the further reason that it ignores the question of proximate cause.

Error is also assigned because of alleged improper conduct of a juror. Affidavits and counter-affidavits were presented on the subject. The alleged misconduct occurred in the court room in the presence of the court, and we are not prepared to say that the court was wrong in holding that the conduct of the juror was not prejudicial to the rights of plaintiff in error. The misconduct charged was a familiar remark to counsel for defendant in error as the juror left the jury box. This was, of course, improper, but the affidavits do not disclose any evil intent. To remove all doubt it would probably have been better for the parties to agree that the juror be discharged and to have submitted the case to the remaining eleven jurors. There is nothing to show that the alleged misconduct was prejudicial to plaintiff in error, and we are not justified in setting aside the verdict because of it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*