(No. 19076.—

EDWARD G. SPENCER, Defendant in Error, *vs.* THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed October 19, 1929—Rehearing denied Dec. 4, 1929.*

Nelson J. Wilcox, and I. C. Belden, for plaintiff in error.

Richard J. Finn, and Oscar C. Miller, (Frank Johnston, Jr., of counsel,) for defendant in error.

Mr. Commissioner Partlow reported this opinion:

Defendant in error, Edward G. Spencer, began suit against plaintiff in error, the Chicago and Northwestern Railway Company, in the circuit court of Cook county, under the Federal Employers' Liability act, to recover damages for personal injuries. A verdict was returned for $30,000, there was a *remittitur* of $7500, a judgment for the balance was affirmed by the Appellate Court for the First District, and the case comes to this court upon a writ of *certiorari.*

There is no conflict in the evidence as to the main facts, and the primary question is whether defendant in error was engaged in interstate commerce at the time of his injury. Defendant in error was forty-two years old. He had been in the employ of plaintiff in error for sixteen years and continuously for four years prior to the injury. He was

a brakeman-collector in the Chicago suburban passenger service of plaintiff in error. On the morning of October 14, 1925, a train consisting of eight empty suburban passenger coaches was backed out of the California avenue coach yards. The rear or west car of the train was a combination baggage and smoking car. The engine was on the east end of the train. The train backed out of the yards in a westerly direction on track No. 6 at about fifteen miles per hour. It was in charge of a back-up man by the name of Dastous, who was on the rear platform. As the train started, defendant in error was in the combination car changing his uniform. Shortly after the train started Dastous discovered an open switch leading to track No. 5, where another train was standing. He called to defendant in error, who ran onto the rear open platform of the combination car. Seeing the danger of a collision he jumped to the ground, caught his foot in a frog and broke his left leg. His injuries were severe. There was a fracture of the end of the tibia, extending from the joint four or five inches, and the bone was spread open half an inch. A metal bolt was put through the upper end of the bone so as to bring it together and was held in place by small ivory pegs or nails. An X-ray showed some atrophy of the bone. Defendant in error was in the hospital from October till the following July. Part of the time he was able to go about on crutches. After leaving the hospital he used a cane continuously. He could not move the leg below the knee or carry anything heavy. He fell frequently because of paralysis of the leg and was unable to lift the leg sufficiently to get over obstructions.

The evidence shows that the daily routine of defendant in error prior to the accident was as follows: The train was parked in the California avenue yards over night. Its crew consisted of an engineer, fireman, conductor, baggage-man-collector and brakeman-collector. As the train backed out of the yards it was known as train No. 29. Its first

trip each morning was west from the California avenue yards and Kedzie avenue to Maywood. It left Kedzie avenue at 6:30 A. M. and arrived at Maywood at 6:45. During this trip it ran as an empty, carried no passengers, freight or express, and made no stops. The Chicago terminal of plaintiff in error was at Madison and Canal streets. The California avenue yards were between the terminal and Maywood. When the train reached Maywood it took on suburban passengers for Chicago, was known as train No. 36, and consisted of the same equipment and crew as train No. 29. It carried no express or freight. It left Maywood at 7:08 and reached Chicago at 7:40. When train No. 36 reached Chicago the engine was on the east end and the combination car was on the west end. Another engine was coupled to the west end, next to the combination car. The east five coaches were cut off. The remainder of the train consisted of the original combination car and two coaches, with another engine and crew but with the same brakeman, conductor and baggageman. It was known as train No. 39 and was scheduled to leave Chicago at 8:24, going west to Elmhurst, where it arrived at 9:10. It carried suburban passengers and express matter, which it is claimed by defendant in error contained interstate express. When train No. 39 reached Elmhurst it returned to Chicago, carrying suburban passengers, only, and was known as train No. 54. It left Elmhurst at 9:35 and arrived in Chicago at 10:15. It consisted of the same equipment and crew as train No. 39. After train No. 54 reached Chicago defendant in error had no other duties to perform until 5:45 P. M., when this train left Chicago as train No. 65 and carried suburban passengers only to River Forest, where it arrived at 6:14.

All of these trains carried as a part of their equipment the same combination baggage and smoking car. About a fourth of this car was partitioned off to provide a compartment for baggage, lockers for the train crew, train equipment, etc. The baggage compartment had been util-

ized on train No. 39 for about a year for carrying express matter from Chicago to Elmhurst. None of the other five trains on which defendant in error worked carried express, but this combination car was a part of the equipment on each of these trains. On each of the trips on all of these trains the combination car was used as a smoking car for suburban passengers. Defendant in error's employment was wholly within the State of Illinois in the suburban passenger service of plaintiff in error. On all of these trips these various trains passed through the California avenue yards and all of the stations were on the same line of road directly west from the Chicago terminal. The order of these stations and their distance from the terminal were: California avenue yards, 3.2 miles; Maywood, 10.4 miles; Elmhurst, 15.8 miles; River Forest, 9.75 miles.

The claim that defendant in error was engaged in interstate commerce at the time of his injury and had a right of recovery under the Federal act is based upon the alleged fact that interstate express was carried on train No. 39 from Chicago to Elmhurst. He testified that on each of the several days he worked on that train he observed that some express was carried which came from outside of Illinois. An elevator man in the employ of the express company testified that he was one of the two general foremen for the company in October, 1925, and he thought seventy-five per cent of this express came from outside of Illinois. Another employee on direct examination testified that at least a portion of it came from outside of Illinois, but on cross-examination he testified that he could not remember whether any of it was carried on this train in October, 1925.

In deciding cases under the Federal Employers' Liability act the jurisdiction of this court is the same as the jurisdiction of the Supreme Court of the United States. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *Coogan,* 271 U. S. 472; *Baltimore and Ohio Railway Co.* v. *Burtch,* 263 id. 540; *Atlantic Coast Line Railroad Co.* v. *Burnette,*

239 id. 199.) In determining the liability the question is not what the employee had been doing or what he expected to do, but what he was doing at the time he was injured. (*Minneapolis and St. Louis Railway Co. v. Winters,* 242 U. S. 353; *New York Central Railway Co. v. Carr,* 238 id. 260; *Delaware, Lackawanna and Western Railway Co. v. Yurkonis,* 238 id. 439.) No recovery can be had unless the employee was at the time of his injury engaged in interstate transportation or in work so closely related thereto as to be practically a part of it. (*Illinois Central Railroad Co. v. Peery,* 242 U. S. 292; *Erie Railway Co. v. Welsh,* id. 303; *Chicago, Burlington and Quincy Railway Co. v. Harrington,* 241 id. 177; *Shanks v. Delaware, Lackawanna and Western Railway Co.* 239 id. 556.) Whether or not an employee is engaged in interstate commerce at the time of his injury depends upon the facts of the particular case. He may be so engaged at one moment and a few minutes later he may not be so engaged. Any work may be interstate if it constitutes preparatory movements in aid of interstate transportation (*Southern Railway Co. v. Puckett,* 244 U. S. 571; *New York Central Railway Co. v. Carr, supra;*) or the furtherance of interstate commerce. (*Kinzell v. Railway Co.* 250 U. S. 130.) The hauling of empty cars from one State to another is interstate commerce. (*North Carolina Railway Co. v. Zachary,* 232 U. S. 248.) An employee working on a train which contains one car used in interstate commerce is engaged in interstate commerce. (*Jeneary v. Chicago and Interurban Traction Co.* 306 Ill. 392; *Southern Railway Co. v. United States,* 222 U. S. 20.) In *Pennsylvania Railroad Co. v. Morrison,* 3 Fed. 986, and *Baltimore and Ohio Railway Co. v. Darling,* 3 id. 987, it was held that a switching movement of intrastate cars made for the purpose of connecting with interstate cars and thereafter forming an interstate train is a movement in interstate commerce, but in *Grigsby v. South-*

*ern Railway Co.* 3 Fed. 988, it was held that the movement to be interstate must be direct, immediate and continuous.

In *Illinois Central Railroad Co.* v. *Peery, supra,* the employee was a conductor in charge of a train service north and south between two stations in Kentucky. He had made the trip south, carrying interstate freight. He was injured while going north with the same engine, caboose and crew. It was held that he was not engaged in interstate commerce. The court said: "Of course, the plaintiff treats the round trip as one, and the return as merely the necessary complement of the trip out. The conclusion is drawn that the plaintiff still was engaged in interstate commerce because the train out had cars destined to Tennessee. But, on the other hand, the trips out and back were distinct, in opposite directions, with different trains. It seems to us extravagant to subordinate the northerly to the southerly journey so completely that if on the latter there happened to be a parcel destined beyond the State the conductor should be regarded as still engaged in commerce among the States when going from Fulton to Paducah even though he had a full train devoted solely to domestic commerce."

The question in this case is whether or not the work in which defendant in error was engaged at the time he was injured was so closely related to interstate commerce as to be practically a part thereof. The facts as to what his duties were and what he was doing are not in controversy, and the question is whether under these undisputed facts he was engaged in interstate commerce. Defendant in error testified that "I worked each day on six different trains." We think this statement was correct. The combination car was not placed in the train for the specific purpose of carrying interstate express to Elmhurst on train No. 39. It was placed in the train as a part of the regular equipment on each of these six trips for the use of the passengers who wanted to smoke on the train and for the use of the train crew for their clothes and equipment as well as for the car-

riage of express to Elmhurst. Neither can it be said that these six trips constituted one continuous journey. Each train had a specific schedule and destination, a time for starting and a time for arriving at each station. At the time defendant in error was injured train No. 29 was backing out of the yards not for the purpose of placing the combination car in position so it could carry interstate express to Elmhurst, but it was backing out of the yards for the purpose of making the trip, as scheduled, to Maywood. After the train returned from Maywood it was broken up. Five cars were removed, a new engine was attached, and almost an hour later the train started for Elmhurst. In *New York Central Railway Co.* v. *Carr, supra,* it was held that the fact that cars might soon thereafter be used in interstate business did not affect their intrastate status. If the fact that cars had been recently engaged in interstate commerce or were expected soon to be used in such commerce brought them within the class of interstate vehicles, the effect would be to give every car on the line that character. In *Grigsby* v. *Southern Railway Co. supra,* it was held that despite the fact that the journey to Turley and back to Vasper was made under one order, that order directed and contemplated two distinct trips for two definite and distinct purposes.

Defendant in error was not engaged in interstate commerce at the time he was injured, the Federal act did not apply, and the judgments of the circuit court and the Appellate Court will be reversed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgments reversed.*