Anthony Corrado and Zoa E. Corrado, Plaintiffs-Appellants, v. Robert Bingham, Defendant-Appellee.

Gen. No. 11,149.

Second District, First Division.

June 3, 1958.

Released for publication June 21, 1958.

Charles D. Snewind, of Chicago, for appellants.

Thomas H. Price, of Elmhurst, for appellee.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

Anthony Corrado and Zoa E. Corrado, husband and wife, as the owners and lessors of the Snack Bar Drive-in Restaurant located in Du Page County, Illinois, brought this action in forcible detainer in the circuit court of Du Page County against the defendant and lessee of the said premises, Robert Bingham, to recover possession thereof. A jury trial was had on the issues made by the complaint and the answer resulting in a verdict finding the defendant not guilty. The verdict was returned on October 2, 1957, and on the same day judgment was entered thereon. Plaintiffs filed their notice of appeal and bond on October 7, 1957, under the provisions of the Forcible Detainer Act (Ill. Rev. Stat. 1957, ch. 57, sec. 19) and the record is before us for review.

Counsel for appellants insist that the trial court erred in denying their motion for a directed verdict at the close of all the evidence and it is further insisted that the verdict of the jury and the judgment entered thereon are contrary to the manifest weight of the evidence.

Counsel for appellee insists that inasmuch as plaintiffs filed no post-trial motion of any kind in the

trial court, appellants are precluded from having this court review any of the alleged grounds for reversal.

Kruse v. Ballsmith, 332 Ill. App. 301 was a forcible detainer suit. The jury returned a verdict finding that the plaintiff was entitled to recover rental, also the possession of the property involved and on the same day the verdict was returned, which was October 1, 1946, judgment was rendered thereon. On October 11, 1946, defendants filed their motion to vacate the judgment which the court denied on the same date. An order fixing the amount of the appeal bond was entered on October 18 and notice of appeal was filed on October 30. In holding that defendants' appeal was not taken in accordance with the provisions of the Forcible Entry and Detainer Act this court, omitting citations, said (p. 306): "This proceeding was instituted under the Forcible Entry and Detainer Act which is specifically excluded from the operation of the Civil Practice Act. By amendment, however, the provisions of the Civil Practice Act are made applicable to matters not covered by the Forcible Entry and Detainer Act, and not inconsistent therewith. Section 19 of the Forcible Entry and Detainer Act prescribes the mode for perfecting appeals under this remedy, and provides that the appeal bond and notice of an appeal from a judgment of the circuit court must be filed within five days from the rendition of judgment under the Forcible Entry and Detainer Act. These requirements have been deemed to be controlling and jurisdictional, and appeals perfected after the five days have been dismissed, notwithstanding the fact that they were taken within the time authorized by the Civil Practice Act. This interpretation is legally sound, inasmuch as the purpose of the Forcible Entry and Detainer Act is to afford a summary remedy in which the rights of the parties may be speedily determined, and a delayed appeal would be inconsistent therewith."

Section 19 of the Forcible Entry and Detainer Act provides that a party aggrieved must file his notice of appeal and bond within five days from the rendition of the judgment. This provision is inconsistent and at variance with the appeal provisions of the Civil Practice Act. The provisions of the Civil Practice Act apply only to proceedings under the Forcible Entry and Detainer Act not inconsistent therewith. (Ill. Rev. Stat. 1957, ch. 57, sec. 11.) The appeal provisions of the two acts are inconsistent. Therefore, section 19 of the Forcible Entry and Detainer Act must govern this appeal. Plaintiffs have done all that the Forcible Entry and Detainer Act requires of them in order to perfect their appeal to this court and to give us jurisdiction to review the alleged errors and we hold that appellants did not waive the errors they rely upon for reversal by failing to file any post-trial motions.

The record discloses that the plaintiffs entered into a written lease with the defendant on July 15, 1955, by the provisions of which they leased to the defendant the premises in question from July 15, 1955, to March 1, 1960. In their complaint they alleged that the defendant breached the provisions of the lease by failing (1) to pay 12% of the gross receipts derived from the operation of the property as rent; (2) to keep proper records; (3) to prevent immoral and illegal acts on the premises; (4) to keep the premises in a clean and sanitary condition; (5) to keep the premises in a good state of repair, and (6) to provide the lessors with certain liability insurance, all contrary to the provisions, covenants and agreements contained in the lease. The defendant answered and specifically denied each and every alleged breach of the lease and upon the trial evidence was introduced tending to support the contentions of the respective parties.

Within a few months after the defendant began to operate the restaurant under the lease in question,

a lack of harmony between the parties to the lease developed and their relationship became progressively strained as time passed. They had no difficulty in finding many things about which to disagree, and their disagreements ultimately culminated in this litigation. The evidence introduced by the opposing parties with reference to each of the six alleged breaches of the lease was conflicting. Typical of the conflict and disagreement of the parties is the testimony introduced in connection with the alleged failure of the defendant to pay to the plaintiffs as rent 12% of the gross receipts received from the operation of the property. The evidence shows that the defendant did not pay to the plaintiffs quite 12% of the gross receipts if the sales tax and the receipts from the juke box and cigarette vending machine located on the premises were to be included in the gross receipts. If the sales tax collected by the defendant and if the full gross receipts from the juke box and cigarette machine be not included, then the evidence shows that the defendant paid slightly more than the required 12% of the gross receipts. The defendant contended that under a proper interpretation of the lease, he should not be required to pay 12% of the amount represented by the sales tax and, also, that with reference to the juke box and cigarette machine he was required to pay 12% only on half of the money received from them since he received only half of the money put into those machines. The other one-half went to the concessionaire. It is significant that although the plaintiffs objected to many other items concerning the defendant's tenancy of the premises, they never objected to his failure to pay 12% of the sales tax or the 12% of the full amount of the receipts from the juke box and cigarette machine until they included the same in the complaint which they filed in this case. Up to that time, they always accepted the 12% as computed by the defendant and without any percent-

age being included for the sales tax or more than one-half of the receipts from the concession machines.

We have read the evidence presented by both parties on this and the other alleged breaches of the lease. It would be of no benefit to detail the evidence on each of the points involved. The evidence is conflicting and it was peculiarly the province of the jury to determine the issues presented by the pleadings. It was not error for the court to deny plaintiff's motion for a directed verdict at the conclusion of all of the evidence. A court is never justified in directing a verdict for the plaintiff where there is evidence from which, when taken with all reasonable inferences and intendments to be drawn or deduced therefrom, the jury might reasonably return a verdict for the defendant. (New York Cent. R. Co. v. Kinsella, 318 Ill. 490; Mirich v. T. J. Forschner Contr. Co., 312 Ill. 343.) Nor do we think the verdict and the judgment entered thereon by the court are against the manifest weight of the evidence. To be against the manifest weight of the evidence requires that an opposite conclusion be clearly evident. (Green v. Keenan, 10 Ill.App.2d 53, 59; Griggas v. Clauson, 6 Ill.App.2d 412, 419.)

From a careful review of the evidence found in this record it does not appear that a conclusion opposite to that arrived at by the jury and the trial court is evident. There is no reversible error in this record and therefore the judgment must be affirmed.

Judgment affirmed.

McNEAL and SPIVEY, JJ., concur.