Elmer H. Deeke and Tanya Deeke, by Elmer H. Deeke, Her Father and Next Friend (Tanya Deeke, by Her Mother and Next Friend, Lillian E. Deeke), Appellants, v. Steffke Freight Co., a Corporation, and Edmond L. Block, Appellees.

**Gen. No. 11,810.**

Second District.

June 9, 1964.

John C. Mullen and John G. Green, both of Chicago (James P. Chapman, of counsel), for appellant.

Snyder, Clarke, Dalziel, Holmquist & Johnson, all of Waukegan (Alfred W. Lewis, of counsel), for appellees.

SCHEINEMAN, J.

This appeal results from a judgment on a jury verdict in favor of defendants. The injured party was a minor child aged 4 at the time of the occurrence and aged 6 at the trial.

The accident occurred about 1 p. m. on a cloudy, but dry day, on a main-traveled street route through a city. This main road runs north-south through a combination residential and business area with a posted speed limit of 35 m. p. h. The plaintiff attempted to cross the roadway from west to east approximately in the middle of a block between cross streets, and she was hit at about the center line of the roadway as defendants' tractor and semi-trailer proceeded north.

■ Since it is contended that the verdict is contrary to the manifest weight of the evidence, it becomes necessary to summarize the testimony.

The injured plaintiff stated that, in company with her two-year-old brother, she was on her way home and had stopped at the side of the road and looked both ways. She saw a car coming from the north and going south, let it go by, saw nothing coming from the south and then proceeded to cross. As she got out toward the middle of the street, her brother let go of her hand and ran back while she continued on and was hit. She heard no horn.

The driver of the southbound car mentioned by the plaintiff, was called as a witness in her behalf. He stated that as he drove south, he noticed two children on the west side of the road. There was no traffic immediately ahead of him, and he knew of none behind him. Just as he passed the children, he noticed them

3

start to cross the street back of his car at the time defendants' truck was approaching from the south. When he met the front end of the truck and was passing it, the trailer was then skidding, and when his car was about at the rear of the trailer, the truck struck the child.

The driver of defendants' truck testified he was going about 28 m. p. h., that he was acquainted with the area, and that the air brakes had been checked and equalized that morning. When he first noticed the children, they were almost to the center of the roadway going at "a fast walk." He applied his brakes fully, and they locked. There is other evidence that in this condition the trailer bounced along with much jarring and noise. An officer paced off the length of the skid marks and found them to be 64 feet. The total length of the vehicle was about 45 feet, and it was not loaded.

A lineman working on a telephone pole in the vicinity, heard the screech of brakes, saw the truck skidding along the road, and saw the child "running" to the east across the road. He saw the girl come in contact with the left front portion of the truck but was unable to say whether the truck struck her or she ran into it.

Plaintiffs' argument is that since the truck driver did not see the children until they were near the center of the road, and did not know exactly where they had come from, this shows he was not keeping a proper lookout and control.

This overlooks the fact that the children started to cross the street behind the southbound car before it met the northbound truck. It is obvious that, at this moment, the truck driver could not see the children and did not see them until the children had advanced far enough to come into view behind the car, or the car had moved far enough to cease blocking the view.

4

In this emergency he immediately applied the air brakes, and the jumping or skidding had already begun by the time the southbound car came even with the front of the truck.

If we accept this testimony as true, it necessarily presents a jury question as to whether the truck driver was negligent or whether he was merely confronted by an unforeseen condition when the children ran, or walked fast, into his path from behind a car approaching him from the north. We cannot say that the jury's verdict is so contrary to the evidence that it should be set aside. Whether defendant was negligent is ordinarily a question of fact for the jury. Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74. To hold that the verdict is against the manifest weight of the evidence requires that an opposite conclusion be clearly evident. Corrado v. Bingham, 17 Ill App2d 537, 150 NE 2d 837. No such clear conclusion is found.

█ It is next contended that the court erred in rulings on instructions. The main criticism is directed at defendants' instruction which was IPI No. 70.03, and it reads as follows:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

"Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observ-

ing any child or any confused or incapacitated person upon a roadway.'

"If you decide that the defendants violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the defendants were negligent before and at the time of the occurrence."

This instruction quoted the two applicable paragraphs of section 172 of the Uniform Traffic Act, ch 95½, Ill Rev St. It is argued that the first section cannot apply to a 4-year-old plaintiff as it contains the inference that the child could be guilty of contributory negligence and, therefore, the first paragraph should have been omitted.

This contention cannot be sustained. The instruction specifically states that it refers to the question whether the *defendants* violated the statute. Furthermore, the court gave plaintiffs' instruction which states "You must not consider the question of whether there was contributory negligence on the part of Tanya Deeke, because, under the law a child of the age of the plaintiff is incapable of contributory negligence." The two provisions of the statute were applicable and should not be separated in this type of case since the one counterbalances the other and thus makes it clear that the right-of-way given to a pedestrian at a crosswalk and not at other places, and the right-of-way given to vehicles at other points, are not absolute rights. Randal v. Deka, 10 Ill App2d 10, 134 NE2d 36; Parkin v. Rigdon, 1 Ill App2d 586, 118 NE2d 342.

The defendant was required to exercise due care at all times, but what constituted due care was subject to variations. Hence, a higher degree of care is re-

quired of the motorist at a crosswalk, but not the same degree of care was required at other points.

■ The court properly refused to give a special instruction concerning the use of a horn. In addition to the statutory provision above quoted, in the instruction, the nonuse of a horn could not possibly have been a proximate cause in this case. It was not only too late, but a number of witnesses testified to the loud noise made by the truck with the application of its brakes, and the attention of persons for some distance around was attracted by this noise, more effectively than by a horn.

■ A number of procedural questions are presented. Complaint is made as to objections and remarks of defense counsel when, on the last day of the trial, plaintiff produced a witness purporting to be an expert on brakes and skid marks. His name was not included in the list of plaintiffs' witnesses furnished to opposing counsel, and no notice was given that he would be called. Defense counsel referred to him in his objection as a "surprise witness." He also mentioned it in his closing argument, but an objection to it at that time was sustained, and he did not refer to it again.

When discovery procedure has been used to elicit the names of witnesses, the calling of an unlisted witness has been recognized as containing an element of surprise. Hansel v. Friemann, 38 Ill App2d 259, 187 NE2d 97.

There is currently much disagreement as to the duty of a trial judge in this situation, but it is usually recognized that he should protect the rights of the surprised party. It has even been held that, under some circumstances, it is reversible error to permit the witness to testify. Battershell v. Bowman Dairy Co., 37 Ill App2d 193, 185 NE2d 340; for a careful

7

analysis of the precedents on the subject, see Wright v. Royse, 43 Ill App2d 267, 193 NE2d 340.

For the purpose of this case, it suffices to say that it was not improper for defense counsel to state that he was taken by surprise, which was a fact, and the objection was not only proper but might have been crucial in the event of a plaintiffs' verdict.

The defense also had objected that this evidence should have been in the plaintiffs' original case rather than on rebuttal. The complaint alleged that the defendants "maintained and operated their vehicle with improper, inadequate, and defective brakes on the tractor." The plaintiff had the burden of proof on this charge and should have included it in the case in chief, if it was to be used at all. This would give the defense an opportunity to call an expert in reply in the orderly procedure of the case. This right was denied to the defense, and a motion for continuance on this ground was also denied. The trial judge used his discretion quite favorably to plaintiff in his several rulings, and the defense was certainly entitled to announce its objections and to speak of the handicaps created by the presentation of the surprise witness.

In cross-examining the unlisted witness, the defense showed him a chart and asked him if the figures on braking distance were correct. Plaintiffs' objection was overruled, and he considers this to be an error on the authority of Ullrich v. Chicago City Ry. Co., 265 Ill 338, 106 NE 828. It was there held improper to cross-examine an expert about texts on which he does not rely. The reason given is to prevent an impression that the witness is testifying against recognized authority whereas the texts are not even admissible. The reasoning does not apply in this case for the witness answered the question that he considered the figures approximately correct. Hence, no

false impression was created that the witness was in disagreement with some other recognized authority.

This episode of the unlisted witness used up considerable time on the last day of the trial. The trial judge had warned counsel several days before that, because he was doing double duty, he had other matters set in probate at a certain hour, and the case had to be finished by that time, which was several days later. Due to the arguments over the surprise witness and the long hypothetical question put to him, there remained less than an hour for final argument. Accordingly, 25 minutes was allotted to each side, and the defense stayed within that limit. The plaintiff ran over using 34 minutes, and the judge was delayed for his other appointments, since there still remained the instructions. Nevertheless, plaintiffs' counsel complained they were unduly limited. We regard the time limitation as reasonable under the circumstances. Hansell-Elcock Foundry Co. v. Clark, 214 Ill 399, 73 NE 787. The problem probably would not have arisen if plaintiffs' case had been presented in proper sequence, and with reasonable notice of intended use of an unlisted witness.

For the purpose of impeaching a witness, the defense called the stenographer who had taken a statement from him prior to trial and had him read portions of it. No attempt, of course, was made to read portions that were not impeaching. On cross, the plaintiff brought out that the statement contained 9 other pages which were not read, and complains now because the defense offered to consent to have all of it read. Plaintiffs' counsel improperly stated to the court and jury he had read the whole statement and gave his conclusion that there was nothing impeaching in it. Why, then, did he waste time to bring out that there were 9 other pages that had not been read?

9

It would seem to be intended to create in the minds of the jurors an impression that the defense was deliberately keeping back something in the statement.

We cannot hold that the remark of counsel was reversible error, nor can we subscribe to the view that, while one trial lawyer chooses to depart from customary procedure, and uses tricks of the trade, the opposing counsel must play dead.

██ Another point is that plaintiff was unduly limited in cross-examining a defense witness on the fact that he had co-operated with defense counsel but had refused to grant an interview to plaintiffs' investigator. Authorities are cited to the effect that cross-examination should be permitted to show a hostile feeling of prejudice against a party. In this case plaintiffs' cross-examination could hardly bring out a showing of ill will against the 6-year-old child. Many people dislike being questioned by attorneys especially when they suspect the purpose is to prepare to attack and belittle them in a public trial. The witness had a right to refuse to talk to anyone in his discretion, and this does not show hostility toward the child.

██ After the jury retired, defense counsel was informed that the child had talked to jurors while the judge and counsel were absent in a conference. Defense counsel did not object, but he informed plaintiffs' counsel of the fact. Likewise, the latter did nothing about it until after the verdict was returned, when the point was raised as grounds for a new trial in his post-trial motion. No attempt was ever made to show what the child had said. Thus, we have the argument from plaintiff, not that an opponent talked to jurors, but that his own client did so. Cases cited by plaintiffs are not in point. It has been held that where there is evidence of conversation with a juror, this does not require a new trial, where the circum-

10

stances are not shown, and there is no way of knowing whether there was prejudice to the losing party. Jeneary v. Chicago & Interurban Traction Co., 306 Ill 392, 138 NE 203. This was the view taken by the trial judge.

The ruling was correct. The child was the charge of her counsel and her next friend, being her father and coplaintiff, and failure to warn or to attempt to control the child disposed to talk with jurors, can hardly be regarded as an error of the court, especially when there is no showing who, if anyone, was prejudiced.

There are a number of other minor complaints made that are not of sufficient importance to include them in this opinion. Suffice to say there was no reversible error in the conduct of the trial, and the judgment is affirmed.

Judgment affirmed.

CULBERTSON, P. J., concurs.

ROETH, J., dissents:

After a closer analysis of the facts than is contained in the majority opinion, I am of the opinion that the giving of defendants' instruction No. 10 was reversible error.