GLORIA ZUKOSKY, Plaintiff-Appellant, *v.* TIMOTHY W. GROUNDS, Defendant-Appellee.

Fifth District No. 79-409

Opinion filed June 4, 1980.

356

Zukosky and Tracy, of Wenona, for appellant.

Mitchell, Brandon & Schmidt, of Carbondale, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

The plaintiff in this personal injury action had sought damages of $35,000. A jury awarded her $896.53. From denial of her post-trial motion for resubmission of the cause to a jury on the issue of damages or, in the alternative, a new trial, plaintiff appeals. She contends: (1) an alleged communication between defendant and a juror prejudiced her right to a fair trial as shown by the verdict for inadequate damages; (2) the verdict was so grossly inadequate that it was contrary to the manifest weight of the evidence; (3) a letter written by one of plaintiff's treating physicians was improperly excluded from evidence; (4) the verdict of the jury was the result of bias and prejudice.

While outdoors at her home in the middle of June 1975, plaintiff turned her ankle and fell backward. As she fell she extended her right arm behind her and landed with her full weight on the arm, severely fracturing her right wrist. Once sufficient healing of the fracture had taken place to permit physical therapy treatments, they were begun. On November 5, 1975, about 2 months after the treatments were instituted and about 6 months after the fracture was sustained, plaintiff was returning from a therapy session. Her automobile, equipped with a knob on the steering wheel to enable her to drive with one hand, was struck from the rear by that of defendant, 17 years old at the time. Plaintiff's automobile, in turn, struck another stopped ahead of her at a street intersection. Plaintiff sustained several injuries, among them a fractured sternum, the result of striking the knob attached to the steering wheel. In addition to apparently minor injuries to a knee and shoulder, she suffered injury to her right wrist, the extent of which would become the crux of the instant lawsuit.

Plaintiff was immediately hospitalized, complaining of pain in her chest, shoulder and right wrist. Two days later she was discharged from the hospital. After January 5, 1976, she required no further treatment for

and apparently had no further complaints with regard to the fracture of the sternum or the minor injuries. Her right wrist, however, still required treatment. She continued to receive physical therapy treatments for it until June 1976, where her family physician referred her to an orthopedic surgeon. The surgeon first examined her in September 1976, and directed the resumption of physical therapy treatments. In January 1977, plaintiff was hospitalized for one week for surgery undertaken to increase wrist motion and decrease pain. After surgery physical therapy was resumed and was continued until April 6, 1977. Plaintiff received a release to full activity and work on June 7, 1977, and on July 5, 1977, returned to work for the first time since her fall 2 years earlier. The nature of her work prior to injury had required her to lift as much as approximately 80 pounds at a time. Upon her return to work she was reassigned to a secretarial position.

On February 9, 1976, plaintiff filed her complaint seeking damages of $35,000. A 3-day trial was had from October 30 to November 1, 1978. Defendant did not seriously dispute liability for plaintiff's fractured sternum or for any other injury claimed to have resulted from the automobile accident except the aggravation of the prior wrist injury. Three physicians who had treated plaintiff for her wrist condition testified as to whether the automobile accident aggravated the prior injury.

Plaintiff called the orthopedic surgeon who had performed the surgery of January 1977. He testified on direct examination that X rays of plaintiff's wrist showed "a healed fracture of the wrist and some shortening of the radius, which is the larger of the two bones at the wrist, as though it had been impacted, and some post-tramatic [sic] or degenerative changes in the region of the wrist joint that we might expect to follow trauma." As to aggravation of the prior injury, he stated, "My opinion would be then, based upon the history, that there was a contribution to the necessity of the surgery deriving from the second accident." But of the extent of the contribution he was uncertain:

"I feel that the initial injury of 15 of June in which she fell backwards and injured her wrist was responsible for most, if not all of the things that we found at the time of my inital [sic] examination. I feel that the contribution made by the second accident could have been an exacerbation of her discomfort and possible [sic] a contribution to limitation of motion in the region of the wrist, but I was unable to determine the degree of contribution to [sic] the second accident to the picture that I saw at the time of the first examination."

On cross-examination he admitted that a patient's history, unaccompanied by confirmatory objective findings, does not constitute a reasonable degree of medical certainty upon which an opinion may be based and that his own opinion as to aggravation of plaintiff's prior injury,

relying as it did only upon the history furnished by plaintiff, could not, therefore, have been based upon a reasonable degree of medical certainty. On cross-examination the surgeon also indicated that any aggravation of plaintiff's prior injury would have occurred in the form of soft tissue injury not revealed by X ray. He further indicated that, given the nature of soft tissue injury, the physician treating the patient immediately after it occurred was in a better position to assess it as an aggravation of a prior injury than he himself was who saw her almost a year afterward.

Defendant called the physician who had treated plaintiff in the emergency room and during her hospitalization immediately after the automobile accident occurred. He seemed not to have treated plaintiff before this time. He testified that "upon examining her I could not detect that the patient received enough injury to her wrist to warrant further X-rays." His initial impression upon plaintiff's admission to the hospital appears to have been an aggravation of a right wrist fracture. But he said, "[O]n examining the patient I could not determine that she had reinjured her wrist to any extent." He further stated, "After having seen her for a couple of days, I didn't feel that she had reinjured her wrist." His impression after observing her for 2 days was that she had not suffered an aggravation of her wrist condition. His discharge diagnosis was as follows:

> "The final diagnosis upon her discharge from the hospital was that she had a fracture to the sternum with partial dislocation of the xiphoid from an automobile accident. Second, she had a contusion to her left knee, again from an automobile accident. She had stiffness and swelling of her right wrist, and pain in her right shoulder from fracture not connected with automobile accident."

Defendant also called plaintiff's family physician of about 10 years who had treated her after both the fall in June and the automobile accident in November. He testified, "I believe that the deformity and the lack of motion from the original injury of June of 1975 was the primary cause of her continuing disability." He stated, "The original injury in June of 1975 was sufficient to cause the trauma." He appeared to refer there to post-traumatic permanent changes in plaintiff's wrist. He further testified, "The patient stated that she had more pain and that she had much [*sic*] more symptoms when she came to me after the accident. I believe that she had more pain and more symptoms at that time from some injury, but as far as the total improvement or lack of improvement following the accident, I could see no relationship."

Plaintiff's family physician testified that he had last examined her before the accident of November 5, 1975, about 2 weeks earlier on

October 20, 1975. He said he examined her again 5 days after the accident and found that the wrist appeared at that time to be in about the same condition in which it had been when he had last seen it in October. During the October examination he found: "After seven weeks of physical therapy there was improvement to the point that there was increased activity in the hand, but she was still unable to close her fist or to even touch the fingers to the palm." He said that during the October visit plaintiff complained of "stiffness in the wrist, constant and continuing pain, and inability to use the hand and wrist for any type of work." He said also that "there was still swelling in the wrist."

The physical therapist who gave the majority of plaintiff's approximately 30 physical therapy treatments prior to the auto accident, including the one from which plaintiff was returning when the accident occurred, testified for her that by the time of the accident plaintiff had made surprisingly good progress. The therapist said that the pain had "subsided considerably," that the "edema had subsided," that plaintiff could grasp, though unevenly, and that she could lift about 5 pounds, but that she could not yet touch her fingers to her palm without assistance.

Plaintiff testified that her pain had diminished during the course of physical therapy and that the swelling had been completely gone for about a month prior to the automobile accident, but that she was not completely able to make a fist. She testified that after the accident there was a great deal of both pain and swelling in her wrist. She said as well that after her fall and before the automobile accident, though not afterward, she had been able to hold money in her hand, to peel potatoes and to prepare garden vegetables for canning. Of the period after the automobile accident she said, "Anything that may have pressure or a grip that I would have to have my hand, I could not do it whatsoever."

In a letter to plaintiff's employer dated October 30, 1975, 6 days before the automobile accident, her family physician had written, "Mrs. Zukosky needs another 30 day leave of absence from her work." Plaintiff testified that because of the physician's remarks to her at the time he executed the leave of absence statement as to when she might return to work and because of the way she felt at the time, she had expected to return to work in 30 days from the date of the written statement. Later her physician testified as to the significance of his letter:

> "This is a standard statement regarding disability; that Mrs. Zukosky would need another thirty day leave of absence from her work. These are given in thirty day increments and are continued as long as the disability continues."

The statement had not, he said, meant that he was going to send her back to work in 30 days. He said further that there was "no record of any

improvement to the point of working" by the time of the accident in November. He stated that the fracture of the sternum would have required her to have been absent from work until at least January 5, 1976.

Plaintiff testified that she had earned $3.96 hourly and had worked about 40 hours weekly. In her reply brief she claims lost earnings in the amount of $12,355.20. There she states that she "was recuperating very satisfactorily, and had previously been told by her family physician that she would return to work within thirty days, which she expected to do." To arrive at the figure of $12,355.20 she uses a weekly rate of $158.40 to compute wages lost for "approximately 1½ years."

Entered into evidence were plaintiff's expenses relating to the hospitalization of November 1975, and the care required immediately following the automobile accident. They included one physical therapy treatment given while she was in the hospital and amounted to approximately $450. Also entered into evidence were plaintiff's expenses relating to the surgery of January 1977, amounting to approximately $1,800, together with apparently all of the expenses plaintiff incurred for physical therapy treatments given after her discharge from the hospital shortly after the automobile accident. No expenses for physical therapy were in evidence for the period between her discharge from the hospital on November 7, 1975, and January 1, 1976. The physical therapy expenses in evidence were incurred between January 2, 1976, and April 6, 1977, and amounted to approximately $850.

A panel of six jurors had been selected and the parties had stipulated that in the event of the death or disability of one of the six, they would continue with five. Prior to the first overnight recess the jurors were cautioned not to "discuss this case with anyone nor among yourselves." At the close of all the evidence and prior to closing arguments a 30-minute recess was called during which the jury instruction conference was to be held. Following the recess, proceedings were resumed in the courtroom with these words:

"THE COURT: All right, back on the record in 76-L-10. Before we proceed, ladies and gentlemen, there is something that I think probably I overlooked to tell you. In these downstate counties like this where everybody knows everybody else just about and we don't have any real facilities for juries, sometimes we have a problem of the witnesses getting intermixed with the jurors and so forth. Normally, I instruct the jury not to talk to or discuss and not talk to any of the lawyers or any of the witnesses, not that anybody thinks that anybody is doing anything wrong, but it kind of gives the appearance of it might happen. Now, I noticed during the recess one of the jurors talking to one of the parties. Now, I don't believe for one minute that anybody was doing anything wrong,

but in the future let's kind of bypass that during jury duty. After that it is fine. If there was anything discussed about the case, which I am sure there wasn't, I think it should be disregarded, because the verdict must be based in this case on what is heard in the courtroom. We have gone over this several times. I just mention this at this time because I think that I am remiss in not saying something about it before. All right, ladies and gentlemen, at this time we will proceed with this case. You will have an opportunity to hear the closing arguments at this time by each counsel. I will then instruct you as to the law in this case, and then you will be allowed to deliberate and reach your decision. Are you gentlemen ready to proceed?

MR. BRANDON [counsel for defendant]: Yes.

THE COURT: Mr. Zubosky?

MR. ZUKOSKY [counsel for plaintiff]: Yes.

THE COURT: All right, Mr. Zukosky, you may proceed with closing argument on behalf of the Plaintiff."

The record contains nothing further relating to the conversation observed during the recess by the court, certainly no objection to the means used by the court to dispel any prejudice that might have resulted from such misconduct.

Closing arguments were made. The jury was instructed to compensate plaintiff for

"* * * any of the following elements of damage proved by the evidence to have rsulted [sic] from the negligence of the defendant:

The nature, extent and duration of the injury.

The aggravation of any pre-existing ailment or condition.

The disability resulting from the injury.

The pain and suffering experienced as a result of the injuries.

The reasonable expense of necessary medical care, treatment, and services received.

The value of earnings lost."

The jury deliberated and reached a verdict in favor of plaintiff, assessing damages in the amount of $896.53.

Post-trial, plaintiff moved that the verdict be set aside and the judgment vacated and that the cause be resubmitted to a jury on the issue of damages or, in the alternative, that a new trial be granted because the defendant "improperly tampered with the Jury" by conversing "with Floyd Hoge, one of the jurors, alone, in the hallway of the court house [sic]" for "approximately twenty minutes prior to the final argument" and that "the said misconduct of Defendant and juror Floyd Hoge was prejudicial to Plaintiff's right to a fair trial and resulted in a verdict for

inadequate damages." Plaintiff claimed that the damages awarded were "patently inadequate," the verdict as to damages was contrary to the manifest weight of the evidence, the verdict resulted from jury passion and prejudice, and the jury "awarded no damages for pain and suffering, for the fractured sternum or for the aggravation of prior injuries." In support of her post-trial motion plaintiff attached an affidavit in which she stated:

"After all the evidence had been presented and before the final arguments, I saw the Defendant and Floyd Hoge, one of the jurors, alone in the hallway in a long and earnest conversation, which I estimate at approximately twenty minutes. I do not know what they discussed but I thought it was improper and I reported it to my attorney. He informed me that he had reported it to the presiding Judge.

After the trial, I again observed the Defendant and said Floyd Hoge in the parking lot, for at least ten minutes, in earnest conversation. I do not know what they discussed at that time.

After the trial, I talked to Betty Presley, one of the jurors, and she informed me that said Floyd Hoge was very influential in the jury deliberations.

I believe that the misconduct of Floyd Hoge, one of the jurors, was prejudicial to my right to a fair trial and resulted in a verdict for inadequate damages."

In an order filed April 30, 1979, after hearing arguments of counsel which are not of record, the court denied plaintiff's post-trial motion, finding that the jury had a reasonable basis for the verdict if the jurors "considered only the elements of damages relating to the automobile accident in question and disregarded the allegations and claims relating to aggravation of the pre-existing injury." The court found the disputed allegations regarding aggravation of the prior injury within the province of the trier of fact to decide. It found also that plaintiff's affidavit "fails to demonstrate that she was prejudiced by any alleged conversation between the Defendant and one of the jurors," that "neither a party nor a juror is permitted to impeach a jury verdict by an Affidavit such as that filed by the Plaintiff," that "the Court's admonishment to the jury prior to their deliberations that they should base their verdict on the evidence adduced in open Court was sufficient to remove any error which may have been committed by any alleged conversation," and that the parties received a fair trial. From the judgment entered on the jury verdict and the denial of the post-trial motion this appeal was taken.

■■ ■ We consider plaintiff's final contention that the verdict resulted from jury bias and prejudice together with her initial contention that the alleged communication between defendant, Timothy Grounds, and juror,

Floyd Hoge, prejudiced her right to a fair trial as may be seen in the verdict for inadequate damages. In her brief plaintiff states,

"The conversation between Defendant Floyd Hoge [*sic*] was brought to the attention of the Court and the Trial Court made the following statement to the Jury * * *."

There follows quoted the court's statement, which we quoted at length above, made to the jury immediately following the recess for the jury instruction conference. According to plaintiff's brief then, she refers in her post-trial affidavit to a conversation reported to the court prior to that statement. The conversation appears to be the same one witnessed by the court during the recess which occasioned his admonishment of the jury shortly thereafter.

Defendant argues in his brief:

"The Plaintiff alleges that she reported all of these events to her attorney who in turn reported them to the trial judge. There is nothing in the record indicating that Plaintiff's attorney asked the trial court to investigate the alleged occurrence, to interview the jurors and/or the Defendant regarding the alleged conversation, or that Plaintiff's attorney asked for a mistrial. Instead, Plaintiff's counsel elected to have the case proceed and to speculate on his chances for a favorable verdict. In fact, the Plaintiff did receive a verdict."

We make no attempt to second-guess counsel's failure to ask of the court more than an admonishment of the jury. We address only the fact of his failure to object of record to the court's treatment of the misconduct as insufficient while time remained for a thorough examination of the parties to the conversation. Had the content and precise circumstances of the conversation been made known, its potential for prejudice, if any, could have been ascertained and, if necessary, a more satisfactory and curative measure than admonishment could have been taken. Especially should counsel have sought such an examination, if that were his wish, where the parties to the cause had stipulated that they would, in the event of the death or disability of one of the six jurors, finish with five. Since plaintiff's counsel expressed no dissatisfaction with the trial court's disposition of the matter when he should and could have done so, he is deemed to have acquiesced in it and in so doing to have waived the point for review. See *Chicago, Milwaukee & St. Paul R.R. Co. v. Krueger* (1887), 23 Ill. App. 639, *aff'd* (1888), 124 Ill. 457, 17 N.E. 52.

Even if we were to consider the merits of this issue, plaintiff would fare no differently. In *Jeneary v. Chicago & Interurban Traction Co.* (1923), 306 Ill. 392, 138 N.E. 203, the trial court held that a familiar remark made to counsel for one of the parties in the presence of the court by a juror as he left the jury box was not prejudicial to the losing party.

Discovering no malicious intent in affidavits submitted regarding the remark, the reviewing court said:

> "To remove all doubt it would probably have been better for the parties to agree that the juror be discharged and to have submitted the case to the remaining eleven jurors. There is nothing to show that the alleged misconduct was prejudicial to plaintiff in error, and we are not justified in setting aside the verdict because of it." (306 Ill. 392, 398, 138 N.E. 203, 206.)

In *Deeke v. Steffke Freight Co.* (1964), 50 Ill. App. 2d 1, 199 N.E.2d 442, after the jury had retired, defense counsel learned of a conversation had between jurors and a child co-plaintiff with her father, while judge and counsel were absent during a conference. Defense counsel made no objection but informed plaintiffs' counsel who "did nothing about it until after the verdict was returned, when the point was raised as grounds for a new trial in his post-trial motion. No attempt was ever made to show what the child had said." (50 Ill. App. 2d 1, 10, 199 N.E.2d 442, 447.) Following a verdict in favor of the defendant, plaintiffs moved for and were denied a new trial. Relying upon *Jeneary*, the reviewing court affirmed, saying:

> "It has been held that where there is evidence of conversation with a juror, this does not require a new trial, where the circumstances are not shown and there is no way of knowing whether there was prejudice to the losing party." (50 Ill. App. 2d 1, 10-11, 199 N.E.2d 442, 447.)

Although the conversation in *Deeke* was between a juror and the losing party, there would seem to be no reason why the rule would not apply equally to one between a juror and the prevailing party where, as in *Deeke*, the party later complaining of the conversation neither sought to have details of it made known nor raised the specter of prejudice until the jury had returned its verdict.

While plaintiff accounts for the verdict by bias and prejudice of the jury resulting from the conversation between the juror and defendant, the trial court explained the verdict otherwise and, we think, correctly, found that plaintiff had not shown that she was prejudiced by the alleged misconduct. Plaintiff's expenses arising out of the hospitalization and necessary care for the sternal fracture as well as for her other injuries immediately after the automobile accident amounted to only about $450. The jury awarded her almost twice that amount. Despite plaintiff's claims to the contrary, we may infer that the sum may well have included compensation for pain and suffering from the sternal fracture and the other injuries sustained in the automobile accident. Asked to determine whether plaintiff's prior wrist injury was aggravated by defendant's negligence, the jury apparently decided that question of fact in favor of defendant, denying compensation for that element of plaintiff's asserted

damage. This was in accord with the testimony of all the witnesses except, perhaps, plaintiff, and the opinions of the three medical witnesses. On the question of aggravation only the opinion of the orthopedic surgeon was at all favorable to plaintiff, and even that, by his own admission, was not reliable. Since plaintiff showed neither the circumstances of the conversation nor prejudice arising out of it, her motion for a new trial on the issue of juror misconduct was properly denied.

■■ Plaintiff next contends that a new trial should be granted because of the inadequacy of the verdict. The rule is that a reviewing court may not intervene unless the verdict of the jury is palpably inadequate or against the manifest weight of the evidence. (*Mount v. McClellan* (1968), 91 Ill. App. 2d 1, 234 N.E.2d 329.) The greater part, by far, of the losses plaintiff claims related to care for her wrist. We have already concluded that the jury could well have believed that very little or no aggravation of plaintiff's prior injury occurred as a result of defendant's negligence. Thus the verdict cannot be said to be either palpably inadequate or contrary to the manifest weight of the evidence. Therefore plaintiff's post-trial motion was properly denied in this respect as well.

Plaintiff's other contention is that a letter written by her family physician to her attorney on November 25, 1975, and offered by plaintiff to impeach his testimony was improperly excluded from evidence. We note that plaintiff did not include this as one of the grounds for a new trial in her written post-trial motion. It hardly needs to be reiterated that a party who files a motion for a new trial in writing is limited on review to the grounds or reasons set forth therein and is deemed to have waived all other grounds or reasons for a new trial not there included. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) Consequently plaintiff has waived that issue also for purposes of appeal.

Affirmed.

KARNS and KASSERMAN, JJ., concur.