**TOKIO MARINE AND FIRE INSURANCE CO., LTD. and Mitsubishi International Corporation, Plaintiffs,**

v.

**FEDERAL MARINE TERMINAL, INC., Defendant.**

**Federal Marine Terminal, Inc., Third-party Plaintiff,**

v.

**ADM Cocoa, Inc. and Nestle USA, Inc., Third-party Defendants.**

No. 04 CIV. 4286(VM).

United States District Court, S.D. New York.

Nov. 9, 2005.

Matthew T. Loesberg, Kennedy Lillis Schmidt & English, New York, NY, for Plaintiffs.

Jeremy J.O. Harwood, Healy & Baillie, L.L.P., New York, NY, for Defendant.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs Tokio Marine and Fire Insurance Company, Ltd. ("Tokio") and Mitsubishi International Corporation ("MIC") (collectively "Plaintiffs") brought an action in New York State Supreme Court against defendant Federal Marine Terminal, Inc. ("FMT") alleging breach of contract, breach of bailment, negligence, and conversion based on the alleged disappearance of approximately 46 metric tons of MIC's cocoa during FMT's storage and delivery of the cocoa. The case was removed to this Court pursuant to 28 U.S.C. § 1441. FMT moves for summary judgment on all claims, and Plaintiffs cross-move for summary judgment on all claims. The Court denies both motions for summary judgment in their entirety for the reasons set forth below.

1. The factual recitation set forth below derives from the following documents on the record of the parties' motions: Plaintiffs' Consolidated Local Rule 56.1 Statement of Material Facts in Support of Its FRCP 56 Cross–Motion for Summary Judgement and Local Rule 56.1 Statement of Additional Material Facts In Opposition to Defendant Federal Marine's FRCP Motion for Summary Judgment, dated April 28, 2005; Verification of Sandford E. Balick Pursuant to 28 U.S.C. 1746, dated April 18, 2005; Federal Marine Terminals, Inc. MTO Schedule for the Port of Albany, effective April 1, 2000, attached as Exhibit A to Declaration of Keith Flagg in Support of Federal Marine Terminals, Inc.'s Motion for Summary Judgment, dated February 18, 2005; Third Party Complaint, dated October 4, 2004; Memorandum of Law in Support of Federal Marine Terminals, Inc.'s Motion for Summary Judgment, dated March 9, 2005 ("FMT's Mem."); Plaintiffs' Memorandum of Law in Opposition to Defendant Federal Marine Terminal's Rule 56 Motion for Summary Judgment, dated April 29, 2005

## I.  BACKGROUND [1]

### A.  THE PARTIES

MIC purchases cocoa from suppliers in cocoa-producing countries and sells to manufacturers in the United States, Japan, and Europe. Tokio is the insurer of the cocoa at issue in this proceeding pursuant to a marine open cargo policy. FMT is a marine terminal operator providing services including cargo loading and unloading, handling, and storage at the Port of Albany in Albany, New York.

On October 19, 2004, FMT filed a Third–Party Complaint against ADM Cocoa, Inc. and Nestle USA, Inc. ADM Cocoa, Inc. and Nestle USA, Inc., were customers of MIC and received deliveries of MIC's cocoa from FMT during the period in which the cocoa at issue in this proceeding was stored by FMT. On June 8, 2005, Plaintiffs, FMT, and third-party defendant ADM Cocoa, Inc., stipulated to a discontinuance of the action as against ADM Cocoa, Inc.

("Pls.' Mem. in Op."); FMT's Local Rule 56.1 Counter Statement of Material Facts, dated May 27, 2005 ("FMT's Ct. St."); Plaintiffs' Memorandum of Law in Support of Plaintiffs' Rule 56 Cross–Motion for Summary Judgment, dated April 29, 2005 ("Pls.' Mem."); Declaration of William J. Ring III in Support of Federal Marine Terminals Inc.'s Motion for Summary Judgment, dated February 17, 2005 ("Ring Dec."); FMT's Memorandum of Law in Opposition to Plaintiffs' Cross–Motion for Summary Judgment, dated May 27, 2005 ("FMT's Mem. in Op."); Deposition of William J. Ring, III, dated April 11, 2005, attached as Exhibit 10 to Verification of Thomas M. Grasso Pursuant to 28 U.S.C. 1746, dated April 28, 2005 ("Ring Dep."); and Report of T.D. Davison, Certified Public Accountant, P.C., dated June 20, 2003 ("Davison Rep."), attached as Exhibit 1 to Verification of Sanford E. Balick Pursuant to 28 U.S.C. 1746. Unless specifically quoted or otherwise cited as necessary, no other citation to these documents will be made.

## B. *THE CLAIMS*

The claims in this proceeding arise from the alleged disappearance of approximately 46 metric tons of MIC's cocoa stored in FMT's terminal warehouse at the Port of Albany. The cocoa arrived at the Port of Albany on May 14, 2001, aboard the M/V PRITZWALK. FMT accepted the cocoa shipment into its terminal warehouse for storage and reported receipt of 91,938 bags of cocoa into its warehouse from the shipment. During the following twelve months, FMT periodically re-packaged portions of the stored cocoa into 2,000–pound sacks referred to as "supersacks" and delivered the supersacks to MIC's customers.

In July, 2002, FMT discovered that although its inventory records showed that 737 bags of cocoa remained from the PRITZWALK shipment, no cocoa remained in its warehouse. FMT subsequently reported the 737 bag shortage to MIC. The 737–bag shortage represents a deficit of approximately 46 metric tons of cocoa.

Plaintiffs allege breach of contract, breach of bailment, negligence, and conversion arising out of the 737–bag shortage. FMT moves for summary judgment on the grounds that Plaintiffs' claims are time-barred pursuant to a time limitation set out in FMT's 2000 Marine Terminal Operator Schedule ("MTO Schedule"), a schedule of rates and practices maintained by FMT pursuant to the Ocean Shipping Reform Act of 1998 ("OSRA"). FMT argues that the MTO Schedule is enforceable against MIC as an implied contract between FMT and MIC pursuant to OSRA § 1707(f). Plaintiffs assert that the MTO Schedule is not enforceable as an implied contract because FMT and MIC entered into an actual contract for storage and delivery of the cocoa which superceded the MTO Schedule pursuant to 46 C.F.R. 525.2(a)(3).

Plaintiffs cross-move for summary judgment on the ground that Plaintiffs have made a prima facie showing of conversion and that FMT has failed to adequately rebut the presumption of conversion that arises from Plaintiffs' prima facie case. The Court finds triable issues of material fact that preclude summary judgment on any claim. Accordingly, the Court denies both motions for summary judgment in their entirety.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) authorizes the granting of summary judgment when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The party moving for summary judgment bears the initial burden of showing the absence of a genuine dispute over any issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a showing, the burden shifts to the non-moving party to provide evidence of "specific facts showing that there is a genuine issue for trial." Fed. R. of Civ. P. 56(e). In considering a motion for summary judgment, the Court must " 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.' " *Williams v. R.H. Donnelley, Corp.,* 368

F.3d 123, 126 (2d Cir.2004) (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003)).

## III. *DISCUSSION*

### A. *FMT'S MOTION FOR SUMMARY JUDGMENT*

#### 1. *Applicability of FMT's MTO Schedule*

FMT moves for summary judgment on the ground that Plaintiffs' claims are time-barred pursuant to the terms of FMT's MTO Schedule. As noted above, an MTO Schedule is a publicly-available schedule of the rates and practices of a marine terminal operator maintained by the operator pursuant to OSRA § 1707(f). *See* 46 U.S.C. app. § 1707(f). FMT alleges that the terms of its MTO Schedule are enforceable against MIC as an implied contract pursuant to OSRA § 1707(f).

OSRA § 1707(f) provides:

A marine terminal operator may make available to the public ... a schedule of rates, regulations, and practices, including limitations of liability for cargo loss or damage, pertaining to receiving, delivering, handling, or storing property at its marine terminal. Any such schedule made available to the public shall be enforceable by an appropriate court as an implied contract without proof of actual knowledge of its provisions.

*Id.* However, an MTO schedule "shall *not* be enforceable as an implied contract" where the parties have an "actual contract" covering the services rendered by the marine terminal operator. 46 C.F.R. § 525.2(a)(3) (emphasis added).

FMT is a marine terminal operator as defined in OSRA. *See* 46 U.S.C. app. § 1702(14).[2] FMT alleges that at the time MIC and FMT entered into an agreement regarding storage of the PRITZWALK shipment, FMT's MTO Schedule was available to the public and complied with the requirements set out in OSRA § 1707. FMT argues that the MTO Schedule must therefore be deemed an implied contract between FMT and MIC pursuant to OSRA § 1707(f).

FMT's MTO Schedule includes the following provision:

[T]he MTO shall be discharged from all liability in respect of loss or damage unless suit is brought within nine (9) months after delivery of the cargo to FMT and only if written notice describing the general nature of the loss or damage has been given to the MTO within five (5) business days of the date of delivery of said cargoes from FMT. The only exception shall be if arrangements for storage are made in writing and agreed upon by all parties.... In the event such arrangements are made, suit must be brought within nine (9) months of the date set forth in the written agreement for delivery of the cargo from FMT.

(MTO Schedule at 16.) FMT argues the nine-month time limitation and the five-day written notice requirement contained in the MTO Schedule bar the Plaintiffs' claims because Plaintiffs initiated the suit on May 19, 2004, more than nine months after both the delivery of the cocoa to FMT on May 14, 2001 and the completion of delivery of the cocoa from FMT to MIC's customers on July 23, 2002, and

---

**2.** OSRA defines a marine terminal operator as "a person engaged in the United States in the business of furnishing wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier, or in connection with a common carrier and a water carrier subject to subchapter II of chapter 135 of title 49, United States Code." 46 U.S.C. app. § 1702(14).

because Plaintiffs allegedly failed to provide written notice of the loss within five business days of delivery of the cocoa from FMT.

Plaintiffs contend that the MTO Schedule is not enforceable as an implied contract because MIC and FMT entered into an actual contract for storage of the cocoa that superceded the MTO Schedule pursuant to 46 C.F.R. § 525.2(a)(3). Plaintiffs allege that rates for storage were negotiated and agreed to without reference to the MTO Schedule and that this agreement constitutes an actual agreement superceding the MTO Schedule. While FMT concedes that FMT quoted storage rates to MIC and that MIC agreed to those rates, FMT contends that the agreement as to rates for storage was "subject to" the MTO Schedule and did not constitute an actual contract that superceded the MTO Schedule.

■ To establish that FMT and MIC entered into an actual contract for storage, Plaintiffs must prove that the agreement concerning storage included all of the essential elements of contract formation, including "offer, acceptance, consideration, mutual assent and intent to be bound." *Oscar Productions, Inc. v. Zacharius,* 893 F.Supp. 250, 255 (S.D.N.Y.1995) (citing Restatement (Second) of Contracts §§ 24, 50, 71 (1981)). The evidence in the record, construed in the light most favorable to the non-moving party, demonstrates that there are genuine issues of fact concerning whether FMT and MIC entered into an actual contract for storage of the PRITZWALK cocoa. Evidence in the record supports Plaintiffs' allegation that FMT provided a "rate quote" to MIC representatives (*see* Email from Bill Ring to Michael Kelly, undated, attached as Exhibit 3 to Plaintiffs' Deposition Exhibits, Volume I), that Plaintiffs accepted the rate, and that both parties assented to and intended

to be bound by the agreement regarding storage and delivery of the cocoa. (*See, e.g.,* Federal Marine Terminals, Inc. invoices to Mitsubishi International, dated January 15, 2002, February 6, 2002, and March 11, 2002, attached as Exhibit 11 to Plaintiffs' Deposition Exhibits, Volume I.) The Plaintiffs' allegations raise issues of fact as to whether the parties entered into an actual contract and as to the specific terms incorporated into such contract. Thus, FMT's motion for summary judgment on the ground that Plaintiffs' claims are barred pursuant to the liability limitation provisions of the MTO Schedule must be denied.

2. *Plaintiffs' Conversion Claim*

■ FMT also moves for summary judgment on Plaintiffs' conversion claim. FMT asserts that the conversion claim is governed by federal law because the claim "arises out of the international carriage of goods by air or seas." (FMT's Mem. at 10.) Under federal law, the party asserting a conversion claim has the burden of establishing that the defendant is "responsible for the loss due to some willful or intentional conduct." *Lerakoli, Inc. v. Pan American World Airways, Inc.,* 783 F.2d 33, 37 (2d Cir.1986). FMT alleges that Plaintiffs' conversion claim must be dismissed as a matter of law because Plaintiffs do not allege that FMT's misconduct was willful or intentional. FMT's argument fails because the federal rule does not apply to Plaintiffs' conversion claim. Pursuant to the Second Circuit's holding in *Colgate Palmolive Co. v. S/S Dart Canada,* the Court finds that New York law, not federal law, governs Plaintiffs' conversion claim. *See* 724 F.2d 313, 315–16 (2d Cir.1983).

In *Colgate,* the plaintiff brought a conversion claim against a marine terminal operator for loss of goods stored at a

terminal warehouse. The parties had contracted to extend the limitations on liability contained in the Carriage of Goods by Sea Act to limit liability for storage of goods prior to loading the goods onto a vessel. A central issue in *Colgate* was whether the contractually extended statutory limitations on liability were enforceable against the plaintiff. The Second Circuit held that state law applied to plaintiff's conversion claim and further found that, pursuant to state law, the contractual limitations on liability were not enforceable because the plaintiffs had proven conversion. *See id.* at 315–16.

■ The Court finds that the Second Circuit's holding in *Colgate* is controlling and accordingly concludes that state law applies to Plaintiffs' conversion claim. *See id.* Under New York law, conversion can be established without a showing of willful or intentional conduct. *See I.C.C. Metals, Inc. v. Municipal Warehouse Co.,* 50 N.Y.2d 657, 431 N.Y.S.2d 372, 409 N.E.2d 849, 853–54 (1980). Thus, Plaintiffs' failure to allege intentional or willful misconduct does not render their conversion claim insufficient as a matter of law. Accordingly, FMT's motion for summary judgment on the conversion claim is denied.

## B. *PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

■ Plaintiffs move for summary judgment on the ground that Plaintiffs have established a prima facie showing of conversion and that FMT failed to adequately rebut the presumption of conversion arising from Plaintiffs' prima facie case. To establish a prima facie case of conversion under New York law, a plaintiff must prove delivery of the stored property to the warehouse and the warehouse's failure to return that property upon proper demand. *See I.C.C. Metals,* 40 Ill.Dec.

645, 406 N.E.2d at 851. Where a plaintiff establishes a prima facie case of conversion, the burden shifts to the defendant to provide an adequate explanation as to why it was unable to properly return the stored property. *See id.* at 853–54. The explanation proffered by the warehouse in such case "must be supported by sufficient evidence and cannot be merely the product of speculation and conjecture." *Id.* at 854. If the warehouse cannot provide a sufficiently supported explanation, the plaintiff is entitled to summary judgment on the conversion claim. *See id.* at 856. Furthermore, where a plaintiff establishes a prima facie case of conversion, any liability-limiting provision in any contract governing the storage relationship is rendered inapplicable. *See id.* at 852.

■ The Court finds that the FMT is a "warehouseman" as defined by the New York Uniform Commercial Code § 7–102. N.Y. U.C.C. Law § 7–102; *see also Colgate,* 724 F.2d at 316. The Court is further persuaded that the record before it contains sufficient evidence to establish a prima facie case of conversion. However, FMT has provided an explanation for the loss of at least a portion of the cocoa that is sufficiently supported by the record to raise a question of fact. FMT alleges that the disappearance of the cocoa can be attributed, in part, to: (1) weight loss caused by the evaporation of moisture from the cocoa, and (2) loss due to handling. The record includes a report commissioned by T.M. Claims Service, Inc., an agent of Tokio, that states that .164 percent of FMT's stored cocoa may have been lost through "normal shrinkage" caused by either moisture loss or handling loss. (Davison Rep. at 8.) Although moisture loss and handling loss are not alleged to account for the entire loss, the explanations offered by FMT are sufficient to raise questions of

fact precluding summary judgment on Plaintiffs' conversion claim.

 FMT also asserts that part of the loss can be explained by FMT's accidental over-filling of supersacks during the re-packaging of the cocoa and delivery of the overweight supersacks to MIC's customers. However, this explanation for the loss of cocoa does not constitute a defense against Plaintiffs' conversion claim because misdelivery resulting in loss of goods constitutes conversion under New York law. *See David Crystal, Inc. v. Cunard S.S. Co.,* 223 F.Supp. 273, 284–87 (S.D.N.Y.1963) ("A bailee who transfers goods in a manner inconsistent with an owner's instructions is liable for conversion to his bailor."); *Fireman's Fund Insurance Co. v. Wagner Fur, Inc.,* 760 F.Supp. 1101, 1105 (S.D.N.Y.1991) (finding that bailee could be liable for conversion for misdelivery of goods even if misdelivery was "merely a mistake" and bailee "received no benefits from the misdelivery.").

Although FMT's accidental misdelivery explanation does not constitute a defense against Plaintiffs' conversion claim, FMT's moisture loss and handling loss explanations are sufficient to raise questions of fact precluding summary judgment. Therefore, Plaintiffs' summary judgment motion is denied.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Federal Marine Terminal, Inc. for summary judgment (Docket No. 25) is denied; and it is hereby further

**ORDERED** that the cross-motion of plaintiffs Tokio Marine and Fire Insurance Company, Ltd. and Mitsubishi International Corporation for summary judgment (Docket No. 30) is denied.

**SO ORDERED.**